UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Sealed

Case No. 0:97-CIV-06072

FEDERAL TRADE COMMISSION,                    )
                                             )
                    Plaintiff,               )
                                             )
vs.                                          )
                                             )
SLIMAMERICA, INC., *et al.*,                 )
                                             )
                    Defendants.              )    Sealed
                                             )

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND OTHER
EQUITABLE RELIEF, PENDING DECISION
ON PLAINTIFF'S MOTION FOR A CIVIL CONTEMPT ORDER



**Table of Contents**

I.     INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A. Original Commission Action  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B. Contempt Defendants and Their Violative Business Practices . . . . . . . . . . . . 6

              1.     Frank Sarcone: A Career Recidivist  . . . . . . . . . . . . . . . . . . . . . . . 6

              2.     LipoBan Clinic, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              3.     Nature's Pharmacy, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

              4.     National Marketing Data, Inc. (NMD)  . . . . . . . . . . . . . . . . . . . 14

III.   ORDER VIOLATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       A.     By Making False Weight Loss Claims, the Contempt Defendants Have
              Violated Section I.A. of the Order.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       B.     By Making False Size Reduction Claims, the Contempt Defendants Have
              Violated Section I.B. of the Order.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       C.     By Making False Performance and Efficacy Claims, the Contempt
              Defendants Have Violated Section I.C. of the Order. . . . . . . . . . . . . . . 18

       D.     By Making False Scientific Validation Claims, the Contempt Defendants
              Have Violated Section I.D. of the Order.  . . . . . . . . . . . . . . . . . . . . . . . 18

IV.    LAW AND DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       A.     This Court has the Authority to Grant the Temporary Restraining Order
              Pending Adjudication of the Commission's Contempt Motion.  . . . . . . . 19

       B.     The Commission Meets the Standard for Entry of Injunctive Relief. . . . 20

              1.     The Commission is Likely to Succeed on the Merits in its
                     Contempt Action Against the Contempt Defendants. . . . . . . . . . 21

                     a.     The Order Is Valid and Lawful. . . . . . . . . . . . . . . . . .. . .. 22

                     b.     The Order is Clear, Definite and Unambiguous. . . .. . . . 22

    c. The Contemnors had the Ability to Comply with the Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

  2. The Balance of Equities Favors Entry of the Requested Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

 C. LipoBan Clinic, Nature's Pharmacy, and NMD are subject to the Final Order pursuant to Fed. R. Civ. P. 65(d). . . . . . . . . . . . . . . . . . . . . . . . . 23

 D. Entry of the Proposed Ancillary Relief, Including an Asset Freeze, Appointment of a Receiver, Evidence Preservation, and Expedited Discovery Is Necessary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

  1. An Asset Freeze is Necessary to Prevent Asset Dissipation. . . . 25

  2. Appointment of a Receiver is Necessary to Ensure Compliance with This Court's Orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

  3. An Evidence Preservation Order is Necessary to Prevent Spoliation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

  4. Expedited Discovery is Necessary to Preserve Documents and Marshal Assets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

  5. *Ex Parte* Relief is Necessary to Preserve Complete Equitable Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## Table of Authorities

### Cases

*Bellsouth Telecommunications v. MCImetro Access Transmission Servs.*, 425 F.3d 964 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974) . . . . . . . . . . . . . . . . . . . . . . 30

*CFTC v. British American Commodity Options Corp.*, 560 F.2d 135 (2d Cir. 1977) . . . . . . . . 23

*Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 25

*Fed. Savings & Loan Ins. Corp. v. Sahni*, 868 F.2d 1096 (9th Cir. 1989) . . . . . . . . . . . . . . . . 25

*Federal Express Corp. v. Federal Espresso, Inc.*, No. Civ.A.97CV1219RSPGJD, 1997 WL 736530 (N.D.N.Y. Nov. 24, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*FTC v. Affordable Media*, LLC, 179 F.3d 1228 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*FTC v. American Nat'l Cellular, Inc.*, 810 F.2d 1511 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 27

*FTC v. Ameridebt*, 373 F. Supp.2d 558 (D. Md. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25, 27

*FTC v. Chierico*, Civ. No. 96-1754 (S.D. Fla. June 23, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*FTC v. Food Town Stores*, 539 F.2d 1339 (4th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*FTC v. Freedom Med., Inc.*, No. C2-95-510 (S.D. Ohio Nov. 7, 1995) . . . . . . . . . . . . . . . . . . . . 20

*FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*FTC v. Gill*, 183 F. Supp. 2d 1171 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*FTC v. Giving You Credit, Inc.*, No. 96-C-2088 (N.D. Ill. Mar. 4, 1997) . . . . . . . . . . . . . . . . . 20

*FTC v. Gumpel*, Civ. No. 97-01114 (E.D. Va. Jan. 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*FTC v. Neiswonger*, Civ. No. 96-02225 (E.D. Mo. July 17, 2006) . . . . . . . . . . . . . . . . . . . . . . . 20

*FTC v. Para-Link Int'l*, 2000 U.S. Dist. LEXIS 21509 (S.D. Fla. Nov. 21, 2000) . . . . . . . . . . . 21

*FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263 (S.D. Fla. 1999) . . . . . . . . . 5, 6, 8, 9, 22, 26, 28

iii

*FTC v. SlimAmerica, Inc.*, 99-12574-BB (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*FTC v. Thomsen-King & Co.*, 109 F.2d 516 (7th Cir. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*FTC v. USA Beverages*, 2005 U.S. Dist. LEXIS 39075 (S.D. Fla. Dec. 5, 2005) . . . . . . . . . . . 21

*FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 25, 27

*FTC v. Vocational Guides*, 2006-2 Trade Cas. (CCH) P75 (M.D. Tenn. 2006). . . . . . . . . . . . . . .
24

*FTC v. Warner Communications, Inc.*, F.2d 1156  (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 21

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 21

*FTC v. Zuccarini*, Civ. No. 01-04854 (E.D. Pa. Dec. 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . 24

*Howard Johnson Co. v. Khimani*, 892 F.2d 1512 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Nat'l Credit Mgmt. Group, LLC*, 21 F. Supp. 2d 424 (D. N.J. 1998) . . . . . . . . . . . . . . . 27

*Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Kemp v. Peterson*, 940 F.2d 110 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Leone Indus. v. Associated Packaging Inc.*, 795 F. Supp. 117 (D. N.J. 1992) . . . . . . . . . . . . . 27

*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 20, 21, 25, 29

*Physicians Interactive v. Lathian Sys., Inc.*, 69 U.S.P.Q 2D (BNA) 1981 (E.D. Va. 2003) . . . 29

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

*Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 26

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 21

*Roe v. Operation Rescue*, 54 F.3d 133 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*SEC v. Bowler*, 427 F.2d 190 (4th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*SEC v. Current Financial Services, Inc.*, 798 F. Supp. 802 (D.D.C. 1992) . . . . . . . . . . . . . . . . 22

*SEC v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Shillitani v. United States*, 384 U.S. 364 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Barnette*, 129 F.3d 1179 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. First Nat'l City Bank*, 379 U.S. 378 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172 (9th Cir. 1987) . . . . . . . . . . . 21

*United States v. United Mine Workers*, 330 U.S. 258 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Waffenschmidt v. Mackay*, 763 F.2d 711 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## Statutes, Rules, & Regulations

Fed. R. Civ. P. Rule 26(d), 33(a), and 34(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Fed. R. Civ. P. Rule 65(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 29

Fed. R. Civ. P. Rule 65(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Section 13(b) of the FTC Act, 15 U.S.C. § 53 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

v

## I.   INTRODUCTION

The Federal Trade Commission ("FTC" or "Commission") moves the Court to issue an *ex parte* Temporary Restraining Order ("TRO") and Order To Show Cause against **Frank Sarcone, a/k/a Frank Sarcona and Dave Johnson**, a career recidivist who is once again marketing diet products via outrageous, fake weight loss claims in violation of a court order.[1] The July 2, 1999 Final Judgment for Permanent Injunction ("Final Order" or "Order")[2] in this case is just one of at least 14 federal court and state administrative orders issued against Sarcone or business entities connected to him.   Treating the Order as if it were a harmless scrap of

---

[1]   In support of its motion, plaintiff has submitted three separate volumes of exhibits ("Exhibits to Memorandum of Points and Authorities in Support of Plaintiff's *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction, and Other Equitable relief, Pending Decision on Plaintiff's Motion for a Civil Contempt Order").   The exhibits are hereafter cited as "PX," followed by exhibit number, paragraph, and Attachment citation.   In addition, the FTC is simultaneously filing the following *ex parte* motions: (1) Motion for Order To Show Cause Why Defendant Frank J. Sarcone And Three Business Entities Under His Control Should Not Be Held In Contempt; (2) Motion for Exception to Local Rule Setting Page Limitation for Legal Memoranda; and (3) Motion to Temporarily Seal Filings.   The Commission will seek a contempt order which includes a provision requiring the contempt defendants to compensate consumer victims for the harm caused by their false representations in the marketing of LipoBan and Nature's Fat Fighting Secret, the two diet products described herein.   In addition, given the contempt defendants' flagrant non-compliance with the conduct provisions of the permanent injunction, stronger relief  is now warranted.   Therefore, the Commission will seek a modification of the Final Order banning Sarcone from advertising, marketing, offering for sale, or selling any drug, food (including dietary supplement), or device intended, designed, or promoted to affect the structure or function of the human body.   The proposed modification will also seek enhanced reporting and record keeping requirements in order to monitor Sarcone's future compliance.   The Commission will file the motion to modify after meeting and conferring with opposing counsel pursuant to Local Rule 7.1.   **The combined filings, including this pleading, are exempt from the court's mandatory electronic filing requirement for two reasons: first, because they are subject to a motion to seal,  and second, because they involve a request for an emergency hearing. CM/ECF Adm. Procedures, Rules 5A and 5F.**

[2]   Judge Ferguson issued the Order following a six day trial at which Sarcone testified and was present throughout.   As noted in Section II.A., *infra*, earlier proceedings in this case included an *ex parte* Temporary Restraining Order and a subsequent Preliminary Injunction.   The provisions of the Preliminary Injunction were subsequently incorporated into the Final Order. *Id.*

confetti, Sarcone has continued making false weight loss and other diet-related claims throughout the eight years since the Order was issued.

Specifically, Sarcone has blatantly violated core provisions of the Final Order which enjoin him from making false representations as to: (1) weight loss; (2) body size reduction; (3) performance and efficacy; and (4) scientific validation of performance or efficacy claims with regard to any diet-related program, service, or product.. Sarcone has perpetuated his order violations through three companies he controls, contempt defendants **LipoBan Clinic, Inc., Nature's Pharmacy, Inc.** , and **National Marketing Data, Inc.**

LipoBan Clinic began advertising and marketing bogus diet products in February 2000. When the company's business imploded after the execution of a search warrant by the Office of the United States Attorney for the Southern District of Florida on October 21, 2004, Sarcone began marketing his diet scam through Nature's Pharmacy.[3] Nature's Pharmacy's operations continue to date, and recent sales data indicate a growth in the company's business. Collectively, the two companies have bilked consumers out of more than $6 million in violation of the Order. *Infra*, Section II.B.2-3. **National Marketing Data, Inc.** ("NMD") – a company owned solely by Sarcone – has received at least $1.1 million in proceeds from the operations of LipoBan and Nature's Pharmacy. NMD purportedly provided LipoBan with marketing and consulting services.

The contempt defendants' widely disseminated advertisements appear in national magazines and major metropolitan newspapers. The ads continue the pattern of outrageously

---

[3] The Commission has been advised that a criminal investigation related to the LipoBan Clinic search warrant remains active.

false representations underlying this case.  For example, the ads claim:

- "**allows you to lose all of your excess weight and inches without torturous dieting or changing what you eat whatsoever**"(emphasis in original);[4]

- "**With the rapid weight loss it creates, Without Changing What You Eat, you're Guaranteed to lose a pound a day or more until all your excess weight & inches are gone . . . . [sic]**" (emphasis in original).[5]

The contemnors also represent that scientific studies validate their performance and efficacy claims.

In fact, the contempt defendants have no scientific basis for their product claims.  Indeed, Dr. Edward Blonz, a diet and nutrition expert retained by the Commission to examine the validity of the contempt defendants' weight loss and other diet-related representations, concluded, after a thorough examination of the relevant scientific evidence, that the contempt defendants' claims are false.

The Commission seeks an *ex parte* Temporary Restraining Order, Preliminary Injunction and other equitable relief, including appointment of a Receiver,[6] to prevent dissipation of assets, insure compliance with the Court's orders, prevent destruction of evidence and removal of property, and obtain expedited discovery, pending action on the FTC's concurrently filed motion

---

[4] PX 7 (Ronald D. Lewis), ¶4, Atts. E and F (LipoBan Clinic advertisements for LipoBan published in *The Plain Dealer* (Cleveland), Sept. 18, 2002 and *The Detroit News,* Sept. 18, 2002).

[5] PX 7 (Lewis), ¶6, Atts. H, I, and J (Nature's Pharmacy advertisement for Nature's Fat Fighting Secret, published in *The San Francisco Chronicle,* Feb. 21, 2007, *The Los Angeles Times,* Feb. 26, 2007, and *The Wilmington Star News* (North Carolina), May 5, 2007).

[6] As indicated by the citations n.78, numerous Courts, both in this District and in other Districts, have issued the relief requested herein.

3

to hold Sarcone and his three corporate shills in civil contempt.[7]  As the Court recognized in the underlying case, *ex parte* relief is necessary given the likelihood that Sarcone will evade service of process, abscond with or destroy evidence, and secret assets.   This likelihood is based on Sarcone's history of fraud violations of court orders, as well as his use of corporate shills and "front men" to hide his illicit activities.

## II.   STATEMENT OF FACTS

### A.   Original Commission Action

On January 27, 1997, the FTC filed a complaint alleging that Sarcone, SlimAmerica, Inc., and another individual defendant, Robert Wyman,[8] violated Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52, by deceptively advertising, marketing, and selling "weight-loss pills" as the "Super-Formula" program ("Super-Formula").   The complaint asserted that from September 29, 1995 until January 27, 1997, in a national advertising campaign, the defendants hawked Super-Formula, a set of three dietary supplements purported to cause astounding weight loss, including "blast[ing] all . . . excess fat" and "absolutely guaranteed to blast up to 49 pounds off you in only 29 days," without any change in diet or exercise.[9]

On January 27, 1997, the Court (Ferguson, J.) issued an *ex parte* Temporary Restraining Order, including an asset freeze, expedited discovery, and appointment of a receiver, against Sarcone and his co-defendants.   Subsequently, on July 9, 1997, the Court issued a Preliminary

---

[7]  The Commission has filed concurrently separate pleadings regarding the contempt aspect of this case.

[8]  There is no evidence linking Wyman to Sarcone's contumacious conduct.

[9]  Compl. ¶4.

4

Injunction ("PI"), continuing all of the provisions in the TRO and adding new restrictions, including prohibiting the defendants from making false or misleading representations regarding: (1) weight loss; (2) reduction in body size; (3) performance and efficacy; and (4) scientific validation of performance or efficacy claims with regard to any diet-related program, service, or product.[10]

On July 2, 1999, following a six-day trial, Judge Ferguson issued a decision which explicitly adopted all of the factual and legal bases underlying the Commission's complaint.[11]  At the conclusion of the decision, Judge Ferguson set forth a short order stating that the PI "is hereby made permanent."[12]  Thus, the Final Order incorporated the conduct restrictions set forth in the PI.[13]  The Court also found Sarcone and his co-defendants jointly and severally liable for $8,374,586 for consumer redress and costs.[14]

---

[10]  PX 9 (Prelim. Inj. With Asset Freeze And Other Equitable Relief), §I.A-D.

[11]  PX 8 (*FTC v. SlimAmerica*, 77 F. Supp. 2d 1263 (S.D. Fla. 1999)).  All subsequent references to the *SlimAmerica* decision are to PX 8.

[12]  *Id.* at 1277.

[13]  Accordingly, citations to the PI are citations to the Final Order.

[14]  *SlimAmerica*, 77 F. Supp. 2d at 1277.  After receiving the Final Order, Sarcone filed, *pro se*, a motion for a stay in the District Court and an appeal to the U.S. Court of Appeals for the 11th Circuit.  Mot. By Frank Sarcone For Stay And Expedited Ruling, *SlimAmerica*, 77 F. Supp. 2d. 1263 (No. 81299-176).  *FTC v. SlimAmerica, Inc.*, 99-12574-BB (11th Cir. 1999).  On November 24, 1999, the Court of Appeals dismissed Sarcone's appeal as untimely filed.  *FTC. v. SlimAmerica, Inc.*, 99-125744-BB.

**B.      Contempt Defendants and Their Violative Business Practices**

      1.      **Frank Sarcone: A Career Recidivist**

As Judge Ferguson observed in his decision, Sarcone has a "long record of assorted fraudulent schemes which have bilked thousands of victims out of millions of dollars in more than a dozen states."[15]  Sarcone's forays into the weight loss industry started as early as 1983 with his dietary supplement scam, "Forever Thin" (1983-1985).  He next moved on to "The Ultimate Solution Diet Program" (1985-1991).  The marketing tactics for each of these diet scams reveals a pattern of making fraudulent, outlandish advertising claims about weight loss and scientific validation of the weight loss claims that Sarcone has continued to the present day.[16]  In addition, Sarcone was a principal in a scam involving a bogus gas selling device called Petromizer.[17]  In each instance, his scams thrived until they were halted by federal and state law enforcement actions.[18]

As discussed below, undeterred by the Final Order, Sarcone quickly resumed his fraudulent conduct in the diet industry – first, via LipoBan Clinic and more recently, through Nature's Pharmacy.  One notable difference – an apparent "lesson" learned from the underlying

---

[15]  *SlimAmerica*, 77 F. Supp. 2d at 1265.

[16]  For example, Forever Thin advertisements promised that users would lose "up to six pounds in the first 48 hours, up to 12 pounds every two weeks thereafter" with "permanent" results. *SlimAmerica*, 77 F. Supp. 2d at 1270.  Ultimate Solution Diet Program ads asserted that "[a]fter the first week, some individuals will see losses of up to 35 pounds" and that obese individuals could "easily drop 40, 65, and even 100 pounds or more." *Id.* at 1271.

[17]  *SlimAmerica*, 77 F. Supp. 2d at 1271.

[18]  At the time of the underlying action, Sarcone was subject to at least 13 state court and federal administrative orders. *SlimAmerica*, 77 F. Supp. 2d at 1270.

case – is that Sarcone now attempts to obscure his role in his diet scams, using others to front his companies. In addition, instead of using the business offices of his companies, Sarcone now operates his businesses from his residential address, 4001 N. Ocean Blvd, B1503, Boca Raton, Florida.[19]

### 2. LipoBan Clinic, Inc.

According to Florida public records, LipoBan Clinic is a defunct Florida corporation which was incorporated on March 14, 2000 and dissolved on December 7 of the same year.[20] In fact, LipoBan Clinic continued to do business until the October 21, 2004 execution of a criminal search warrant at its place of business, 22610 SW 66th Avenue in Boca Raton, Florida.[21]

Although LipoBan Clinic's purported president, according to Florida corporate records,

---

[19] *See, e.g.,* PX 2 (Glenna Coopersmith), ¶6 (testimony by ex-employee of LipoBan Clinic that Sarcone worked at his home, receiving faxes and emails) PX 7 (Lewis), ¶10(f), Att. R (form for Sarcone's company, National Marketing Data, listing 4001 N. Ocean Blvd address as corporate address); *Id.*, ¶17, Att. V (authorization form for National Marketing Data's corporate account at Wachovia Bank, listing 4001 N. Ocean Blvd. address); PX 6 (Debra Dalsbo), ¶5-6 (testimony of postal employee stating that as recently as July 23, 2007, Sarcone received mail for his company, Nature's Pharmacy, at the 4001 N. Ocean Boulevard address).

At his pretrial deposition on September 3, 1997, Sarcone identified the 4001 North Ocean Blvd. address as his residence. PX 2 (Ronald D. Lewis), ¶31(a), Att. CC, 398, 410. According to a postal employee, he continues to occupy the same apartment. PX 6 (Dalsbo), ¶¶ 2-3.

[20] *See* PX 7 (Lewis), ¶3(a), Att. A.

[21] *Id.* Prior to its dissolution LipoBan adopted an alternative legal identity – National Pharmaceuticals, Inc. PX 7 (Lewis), ¶10(b), Att. N (IRS Application for Employer Identification Number on behalf of National Pharmaceuticals, signed by LipoBan Clinic's purported principal, George Forgione, listing as response to question regarding "Trade Name of Business," "LipoBan Clinic, Inc."). National Pharmaceuticals was incorporated as a Florida corporation in September 2000 and subsequently changed its name to 1515 Investment Holdings, Inc. PX 7 (Lewis), ¶3(c), Att. C. During 2002 and 2003, National Pharmaceuticals received at least $323,301 from LipoBan Clinic, and, in turn, paid at least $108,000 to LipoBan Clinic. PX 7 (Lewis), ¶13(b).

was George Forgione, Sarcone was an active, hidden principal in the company.  Glenna

Coopersmith (a/k/a Ginger Cooper), an ex-employee of LipoBan Clinic, who worked at LipoBan

Clinic for two and a half years, states in a sworn declaration that Sarcone held himself out as a

principal of the company when he hired her and was responsible for the marketing of LipoBan

Clinic's diet products, including setting up newspaper ads.[22]  Coopersmith also indicates that

Sarcone used the name, "Frank Sarcona," which he had previously used in SlimAmerica, as well

as a new alias, "Dave Johnson."[23]   In addition, a codicil to a will executed by Forgione identifies

"Frank Sarcona" as Forgione's "partner-in-fact" and "unofficial business partner" in LipoBan

Clinic.[24]

 Further evidence of Sarcone's role as a principal of LipoBan Clinic is contained in

business records that were seized during the execution of the criminal search warrant in October

2004.  The records include various invoices and faxes from LipoBan Clinic's suppliers, all

addressed to Sarcone using either his "Frank Sarcona" or "Dave Johnson" aliases.[25]  Finally,

Sarcone received at least 31 separate payments, totaling **$873,974** from LipoBan Clinic, through

---

[22]  PX 2 (Coopersmith), ¶¶ 2, 5.

[23]  *SlimAmerica*, 77 F. Supp. 2d at 1266 n.1; PX 2 (Coopersmith) at ¶2.  Further, the former wife
of George Forgione, Sarcone's partner, has stated that her husband identified Sarcone as his
partner.  PX 3 (Marjorie Smith), ¶5.

[24]  PX 2 (Coopersmith), Att. 1.

[25]   PX 7 (Lewis), ¶10(i)(j), Atts. DD, EE.  For example, a September 10, 2001 fax cover page
from LipoBan Clinic's media placement contractor, Novus Print Media, addressed to "Dave
Johnson, LipoBan Clinic" asks him to confirm the company's payment status on past due
invoices.  Several other Novus invoices from that time period similarly list "Dave Johnson" as
the contact for LipoBan Clinic.  *Id.*

8

his company, National Marketing Data.[26]  Notations on many of the checks, as well as LipoBan

Clinic invoices, indicate that the payments were for "consulting" and "marketing" services on

behalf of LipoBan Clinic.[27]

The active ingredient in the LipoBan dietary supplement was chitosan, a derivative of

chitin.  Chitin was one of the discredited ingredients in SlimAmerica's Super Formula product.[28]

Undeterred by this reality, LipoBan Clinic made numerous claims touting the purported benefits

of its product, including:

- "**. . . allows you to lose all of your excess weight and inches without torturous dieting or changing what you eat whatsoever.**"  (emphasis in original);[29]
- "With LipoBan in your system, dietary fat will be zapped before it has a chance to latch on to your stomach, hips, thighs, and rear-end";[30]
- ". . . numerous clinical studies have been successfully completed on this incredible product . . . ";[31] and
- "'I went from 310 lbs. to 190 lbs. in just 90 days . . .  I lost 4 ½" on my neck, 14" on my waist . . .' Jerry E. Brown, Ph.D."[32]

LipoBan Clinic's ads appeared in numerous newspapers and magazines throughout the United

States.  The publications included *The Washington Post*, *Parade Magazine*, *Women's World*,

_____

[26]  PX 7 (Lewis), ¶18(a).  *See* Section II.B.4., below, for a discussion of Sarcone's connection to NMD.

[27]  PX 7 (Lewis), ¶10(a), Att. M.

[28]  *SlimAmerica*, 77 F.Supp. 2d at 1266, 1274.

[29]  PX 7 (Lewis), Atts. E, F.

[30]  PX 7 (Lewis), Atts. E, F.

[31]  PX 7 (Lewis), Atts. E, F.

[32]  PX 7 (Lewis), Atts. E, F, G.

*Family Circle, The Plain Dealer* (Cleveland), and *The Detroit News*.[33]

Credit and debit card sales for LipoBan Clinic[34] indicate that LipoBan Clinic generated at least $5.2 million from its contumacious conduct.[35]  Records from LipoBan Clinic's corporate bank accounts indicate that its business ceased after execution of the search warrant on October 21, 2004.[36]

### 3.    Nature's Pharmacy, Inc.

Nature's Pharmacy is an active Florida corporation incorporated by Melodie Farr on August 26, 2002.[37]  The company's most recent ads and mailings list its business address as 2200 N.W. Boca Raton Boulevard, #105, Boca Raton, FL 33431.[38]

---

[33]  PX 7 (Lewis), Atts. E, F, G.

[34]  As discussed further in Section II.B.3., below, First Data Corporation also processes credit and debit card transactions for Nature's Pharmacy.

[35]  PX 7 (Lewis), ¶23(c).  According to the documents produced by First Data Corporation, the company that processed LipoBan Clinic's credit and debit card transactions, the company's sales, less returns and credits, were $6,198,886 for 2002-2004.  *Id.*  Although LipoBan Clinic sold other nutritional products besides LipoBan, an analysis of LipoBan Clinic's advertising by FTC investigator Ron Lewis indicates that LipoBan was at all times the company's primary product.  *Id.*  Even if just 50% of LipoBan Clinic's credit and debit card sales are attributed to LipoBan – an extremely conservative estimate given the product's prominent role in the company's marketing – consumer injury for this three year period would be $3,099,443.  *Id.*  Assuming the same sales pattern for 2000-2001 – a period when LipoBan Clinic was equally active – total credit and debit card sales for LipoBan from 2000-2004 would be **$5,165,739**.  *Id.*  This figure is likely an underestimate since it omits receipts LipoBan Clinic received from check and cash sales for the entire 2000-2004 period.

[36]  PX 7 (Lewis), ¶14.

[37]  PX 7 (Lewis), ¶3(b), Att. B.

[38]  PX 7 (Lewis), ¶6, Atts. H, I, and J (ads); ¶8, Att. L (marketing materials sent to consumers).  However, this address is occupied by a third party, Instamail, which packages and mails Nature's Pharmacy's products, and, in addition, receives the company's mail.  PX 7 (Lewis), ¶30; PX 4

On April 18, 2005 – less than six months after the execution of the search warrant against LipoBan Clinic -- Sarcone was added to the corporate roster as Nature's Pharmacy's registered agent and sole officer and director.[39]  Subsequently, on April 29, 2006, Natural Pharmaceuticals, LLC, replaced Sarcone as the company's sole principal.[40]  On May 10, 2006, in yet another change, Leonard Haimes, a 79-year old doctor who testified as Sarcone's expert witness during the preliminary injunction hearing in this case in 1997,[41] was substituted for Natural Pharmaceuticals, LLC.[42]

Notwithstanding Haimes' designation as sole officer, Sarcone's continues to actively participation in and control Nature's Pharmacy.  Sarcone's involvement is evidenced by the flow of substantial sums of Nature's Pharmacy monies to his company, National Marketing Data – the same company he used as a conduit for proceeds from the LipoBan Clinic operation.  Specifically, bank records for NMD's corporate account at Wachovia Bank, which is controlled

---

(Rother), ¶¶10-11; PX 5 (Watson), ¶¶3-6.

[39]  PX 7 (Lewis), ¶3(b).

[40]  *Id.*  Plaintiff has been unable to locate incorporation records for Natural Pharmaceuticals, LLC, either in Florida or in any other state.  Based on Sarcone's earlier conduct in this case, there is a possibility that the company is based overseas.

[41]  At the preliminary injunction hearing, among other things, Haimes asserted that with respect to diet products like SlimAmerica's Super Formula, "in my medical and clinical judgment, double blind studies don't mean a thing." PX 7 (Lewis), Att. BB at 19.  Instead, Haimes preferred to rely on "patient outcome studies [which] fall into the area of testimonials." *Id.*  On March 26, 1999, Dr. Haimes was reprimanded by the Florida Board of Medical Examiners, ordered to submit to a professional examination, and fined $1,500 for failure to keep adequate medical records.  PX 7 (Lewis), ¶24.

[42]  PX 7 (Lewis), ¶3(b).  Sarcone continues to be listed as Nature's Pharmacy's registered agent. *Id.*

by Sarcone,[43] show that between January 15, 2006 and March 30, 2007[44] there were at least 64

separate deposits, totaling **$217,735**, involving monies from Nature's Pharmacy.[45]  More than

half of these deposits (34), totaling **$114,000**, were made during the period when Haimes

purportedly replaced Sarcone as the company's principal, including one as recently as March 29,

2007, for $27,000.[46]  Sarcone's involvement with NMD is further highlighted by the declaration

of a Postal Service employee who delivers mail to his 4001 N. Ocean Blvd. address, who states

that as recently as July 23, 2007, Sarcone received a Nature's Pharmacy mailing.[47]

 As in the case of LipoBan Clinic, the advertisements for Nature's Fat-Fighting Secret, the

dietary supplement product sold by Nature's Pharmacy, contain outrageous weight loss and

related claims, including:

-  "**Without changing what you eat, you're guaranteed to lose a pound a day or more until all your excess weight & inches are gone . . .**" (emphasis in original);[48]
-  It stops hunger, increases energy and prevents fat calories from being absorbed by

---

[43]  PX 7 (Lewis), ¶¶16, 18,  Att. V.

[44]  March 30, 2007 was the most recent date for which there were records.

[45]  PX 7 (Lewis), ¶18(b).  Nature's Pharmacy's total credit and debit card sales, less returns,  for the period from February 28, 2006 to May 30, 2007 were $677,273.  PX 7 (Lewis), ¶22(a).  The $217,735 in payments to Sarcone represent 32% of this amount.

[46]  PX 7 (Lewis), ¶18(b) and Att. FF.  Significantly, an earlier deposit, dated May 15, 2006, made payable to NMD for $5,000, identifies the payor in embossed typeface as "Frank Sarcona/Naturespharmacy Inc. [sic]," thus belying the assertion in Nature's Pharmacy's corporate filings that Sarcone was no longer the principal at this time.  PX 7 (Lewis), ¶18, Att. X.

[47]  PX 6 (Dalsbo), ¶6.

[48]  PX 7 (Lewis), Atts. I, J.

.               your body";[49]

- • "All of the natural ingredients in Nature's Fat-Fighting Secret have been proven and verified by dozens of independent clinical studies to be safe and effective for weight loss";[50]

- • "**I lost 126 pounds in just 120 days!** . . . In the first 30 days I lost 44 3/4 pounds eating the foods I love!  No diet plans, no counting calories . . ." (emphasis in original).[51]

Nature's Pharmacy ads for Nature's Fat-Fighting Secret have appeared in publications such as the

*Los Angeles Times* and the *San Francisco Chronicle*.[52]

Nature's Pharmacy's average monthly sales for credit and debit card purchases during the

period between February 28, 2006 and May 30, 2007 indicate that the company's sales are

increasing at a substantial rate.  During the five month period between August and December

2006, Nature's Pharmacy's sales averaged $44,233 per month; in contrast, during the five month

period from January - May 2007, sales averaged $76,013 per month.[53]  Since the company also is

receiving monies through check and cash sales – evidenced by its receipt of a check through the

FTC's undercover purchase – its annual sales for the current year likely will exceed $1 million.[54]

---

[49]  PX 7 (Lewis), Atts. H, I, J.

[50]  PX 7 (Lewis), Atts. H, I, J.

[51]  PX 7 (Lewis), Att. J.

[52]  PX 7 (Lewis), ¶6(a), (b).

[53]  PX 7 (Lewis), ¶22.  At this rate of return, assuming no further growth, Nature's Pharmacy would gross **$912,156** in 2007 from just its credit and debit card sales.

[54]  PX 7 (Lewis), ¶¶8(b), 22.  Further evidence of Nature's Pharmacy's surging sales is found in the declaration of postal employee, Valerie Rother, who estimates, based on recent observations of the company's product mailings, that it is shipping 350-500 boxes of its product per week. PX 4 (Rother), ¶5.

13

.

### 4.    National Marketing Data, Inc. (NMD)

NMD is a defunct Florida corporation that was active from August 18, 1997 until its administrative dissolution on October 16, 1998.[55]  Florida corporate records list Sarcone as its sole incorporator and officer.[56]  Moreover, in a pretrial deposition in this case held one month after NMD's incorporation, Sarcone admitted that he formed and controlled NMD.[57]

Notwithstanding its purported defunct status, NMD is in fact an active corporation which has facilitated the illicit activities of Sarcone, LipoBan Clinic and Nature's Pharmacy.  As described in Section II.B.2-3, *infra*, during the period between January 1, 2002 and March 31, 2007, NMD's corporate account at Wachovia Bank received a total of at least $1.1 million from LipoBan Clinic and Nature's Pharmacy.[58]  A number of the LipoBan Clinic payments were earmarked for NMD's marketing and consulting services.[59]  In addition, NMD made at least $29,000 in payments to LipoBan Clinic and $13,800 in payments to Nature's Pharmacy.[60]

Sarcone has remained in continuous control of NMD since its incorporation.  A form for the credit reporting company Experian, faxed to LipoBan Clinic on August 2, 2002 and completed by a LipoBan Clinic employee, lists Sarcone as the agent for NMD and provides his

---

[55]  PX 7 (Lewis), ¶3, Att. D.  Florida corporate records list the address of NMD as 2234 North Federal Highway, #319, Boca Raton 33431.  *Id.*  However, the signature card for the company lists Sarcone's residential address, 4001 N. Ocean Blvd. as it address.  PX 7 (Lewis), ¶17, Att. V.

[56]  *Id.*

[57]  PX 7 (Lewis), ¶30(c), Att. CC.

[58]  PX 7 (Lewis), ¶18(a), (b).

[59]  PX 7 (Lewis), ¶10(a), Att. M.

[60]  PX 7 (Lewis), ¶19(c) and (e).

14

home address as the corporate address.[61]  Moreover, the signature card for NMD's corporate

bank account at Wachovia also lists Sarcone's home address.[62]  In addition, Wachovia records

list Sarcone's license number as the identification for the authorized user on the account.[63]  Not

surprisingly, Sarcone's name appears regularly on deposits to the account, including transactions

made as recently as this year.[64]

## III.  ORDER VIOLATIONS

As indicated in the declaration of Commission expert Edward R. Blonz, the contemnors'

advertising claims have violated the core conduct prohibitions of the Final Order set forth in PI

§I.A.-D.[65]  The declaration of Dr. Edward R. Blonz, Ph.D., the expert on weight loss and diet

products retained by the Commission to review the contemnors' advertising claims, indicates

---

[61]  PX 7 (Lewis), ¶10(f), Att. R.

[62]  PX 7 (Lewis,), ¶17, Att. V.  The signature on the account card is illegible.

[63]  PX 7 (Lewis), ¶17, Att. V.

[64]  PX 7 (Lewis), ¶18(d).  Records concerning withdrawals from the NMD account suggest that it was used by Sarcone as a private slush fund throughout the period of the contumacious activity described herein.  For instance, the account was used to make at least 56 separate monthly rent payments to a person whom Sarcone previously identified as his landlord.  PX 7 (Lewis), ¶19(d) and ¶30, Att. CC, 418-419.  In addition, there were at least thirty (30) separate "cash" withdrawals from the account totaling $190,601, each signed with a signature that appears to be virtually identical to Sarcone's, *id.*, ¶19(b), as well as at least three separate cash withdrawals, each for $10,000,  made out directly to Sarcone. *Id.*, ¶19(a).

[65]  Apart from the violations of the conduct provisions, there is a separate issue whether Sarcone has posted the $5 million performance bond required by the Final Order.  As indicated in the Lewis Declaration, PX 7, ¶26, the FTC has been unable to locate any record indicating that it was notified a bond had been posted, as required by PI § V.  One of the rationales for the expedited discovery requested in plaintiff's motion for an *ex parte* TRO is to ascertain prior to the contempt hearing whether Sarcone in fact posted the performance bond. *See* Section IV.D.4, *infra.*

that the contempt defendants have made blatantly false representations regarding weight loss, size reduction, performance and efficacy, and scientific validation for both LipoBan and Nature's Fat-Fighting Secret.[66]

### A.     By Making False Weight Loss Claims, the Contempt Defendants Have Violated Section I.A. of the Order.

Section I.A. prohibits Sarcone and those acting in concert with him who receive actual notice of the Order from making "directly or by implication . . . [any] . . . false . . . statements or representations that a program, service, or product will cause weight loss."[67]  As discussed earlier, the contempt defendants make weight loss claims such as "allows you to lose all of your excess weight . . . without torturous dieting or changing what you eat whatsoever" (LipoBan), "With the rapid weight loss it creates, Without Changing What You Eat, you're Guaranteed to lose a pound a day or more . . ." (Nature's Pharmacy).  In addition, the ads for LipoBan and Nature's Pharmacy contain graphic testimonials of persons who have lost huge amounts of weight in short periods of time, using the companies' products: **"I lost 120 Pounds in just 90 days with LipoBan!"** (LipoBan); '**I lost 126 pounds in just 120 days!** . . .  No diet plans, no counting calories . . ." (Nature's Pharmacy) (emphasis in originals).[68]

Dr. Blonz found no evidence in scientific literature that the active ingredients of either company's products, either individually or collectively, when taken as directed by the contemnors, would cause weight loss.[69]  Indeed, even if taken in substantially higher amounts

---

[66]  PX 1 (Blonz), ¶13.

[67]  Order, citing PI § I.A.

[68]  PX 7 (Lewis), Atts. E-G (LipoBan); Atts. H-J (Nature's Pharmacy)

[69]  PX 1 (Blonz), ¶¶23, 30-31.

16

than the recommended daily dose, the weight loss benefits attributable to ingredients in LipoBan

Clinic and Nature's Pharmacy's product, Nature's Fat-Fighting Secret, were extremely limited

and would not produce results even remotely approaching the benefits claimed by the ads.[70]

Based on this lack of evidence and the implausibility of the advertising claims, Dr. Blonz

concluded that the contemnors' weight loss claims are false.[71]

**B.      By Making False Size Reduction Claims, the Contempt Defendants Have
Violated Section I.B. of the Order.**

Section I.B. prohibits Sarcone and those acting in concert with him who receive actual

notice of the Order from making "directly or by implication . . . [any] . . . false . . . statements or

representations that a program, service, or product will cause a reduction in body size."[72]  As

discussed earlier, the contempt defendants make outlandish size reduction claims such as ". . .

allows you to lose all of your excess . . . inches without torturous dieting or changing what you

eat whatsoever," (LipoBan), "'. . . I lost 4 ½" on my neck, 14" on my waist . . .' Jerry E. Brown,

Ph.D." (LipoBan), and  "Without changing what you eat, you're guaranteed to lose a pound a

day or more until all your excess . . . inches are gone . . . ." (Nature's Fat-Fighting Secret).  As

with the contempt defendants' weight loss claims, Dr. Blonz found no evidence that the active

ingredients in the products, individually or collectively, when taken as directed, or, for, that

---

[70] *Id.*  For instance, one study involving a dose of chitosan 50% higher than the recommended
dose for LipoBan reported a weight loss of 2.2 pounds over 60 days when accompanied by a
dietary program that included dietary and lifestyle advice as well.  PX 1 (Blonz), ¶23(a).

[71] *Id.*  With respect to the testimonials, Dr. Blonz concluded, on the basis of his knowledge of
nutritional science, that in addition to dieting, the consumer would have had to run the equivalent
of a marathon or an almost-marathon every day in order to achieve the claimed benefits.  PX 1
(Blonz), ¶¶25-26, 33-34.  Not surprisingly, Dr. Blonz found that this was "implausibl[e]."  *Id.*,
¶13.

[72] Order, citing PI § I.B.

matter or in substantially higher amounts, would cause a user's body to reduce in size.  Based on this lack of evidence and the implausibility of the advertising claims, Dr. Blonz concluded that the contemnors' size reduction claims are false.[73]

### C.     By Making False Performance and Efficacy Claims, the Contempt Defendants Have Violated Section I.C. of the Order.

The contemnors make performance and efficacy claims such as "With LipoBan in your system, dietary fat will be zapped before it has a chance to latch on to your stomach, hips, thighs, and rear-end" and  "It stops hunger, increases energy and prevents fat calories from being absorbed by your body" (Nature's Fat-Fighting Secret).  Again, Dr. Blonz found no evidence for the contemnors' performance or efficacy claims whether or not LipoBan or Nature's Fat-Fighting Secret were taken as directed or in or in substantially higher amounts.  Accordingly, based on this lack of evidence and the implausibility of the claims, Dr. Blonz concluded that the contemnors' performance and efficacy claims are false.[74]

### D.     By Making False Scientific Validation Claims, the Contempt Defendants Have Violated Section I.D. of the Order.

The contemnors' make scientific validation claims such as ". . . numerous clinical studies have been successfully completed on this incredible product . . . " (LipoBan) and "All of the natural ingredients in Nature's Fat-Fighting Secret have been proven and verified by dozens of independent clinical studies to be . . . effective for weight loss" (Nature's Fat-Fighting Secret).  In fact, Dr. Blonz found no evidence of peer-reviewed literature regarding the LipoBan or Nature's Fat-Fighting Secret formulations.  Dr. Blonz also found no clinical studies verifying the efficacy of active ingredients in either product, when taken as directed, or in substantially higher

---

[73]  PX 1 (Blonz), ¶¶13, 23, 30-31.

[74]  *Id.*

amounts, in achieving weight loss or any other diet-related benefit. Based on this absence of evidence and the implausibility of the claims, Dr. Blonz concluded that the contemnors' scientific validation claims are false.[75]

In conclusion, Dr. Blonz's findings underscore the reality that the contempt defendants' advertising and marketing claims for LipoBan and Nature's Fat Fighting Secret are nothing more than a web of lies designed to sell products with no scientifically demonstrated value as diet aids.

## IV.    LAW AND DISCUSSION

The Court has authority to grant a Temporary Restraining Order where, as here, the Commission is overwhelmingly likely to prevail in its contempt action and the equities favor issuing the injunction. In addition, *ex parte* relief, including an asset freeze, appointment of a receiver, and expedited discovery is necessary to halt their contumacious actions and to prevent them from dissipating their assets or destroying evidence.

### A.    This Court has the Authority to Grant the Temporary Restraining Order Pending Adjudication of the Commission's Contempt Motion.

The Court has the authority to issue the equitable relief sought by the Commission pursuant to its inherent equitable powers to enforce its Permanent Injunction, preserve the status quo, and provide for complete equitable relief, including redress to consumers harmed by the contempt defendants' contumacious conduct.[76] Moreover, in a contempt proceeding to enforce a permanent injunction, the Court retains its power to issue a Rule 65(b) *ex parte* Temporary Restraining Order with ancillary equitable relief where necessary to preserve a meaningful

---

[75]  PX 1 (Blonz), ¶31.

[76]  *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

contempt remedy.[77]  Many federal courts have granted the FTC's motions for such relief in

contempt proceedings in cases brought by the FTC pursuant to Section 13(b) of the FTC Act.[78]

Thus, the Court has ample authority, and there is ample precedent for granting a Temporary

Restraining Order and other preliminary relief, including an asset freeze, appointment of a

receiver, immediate access to the contempt defendants' business premises, and expedited

discovery, pending a final decision on the merits of these contempt proceedings.

### B.    The Commission Meets the Standard for Entry of Injunctive Relief.

The standard for obtaining injunctive relief for matters involving violations of a federal

statute differs from that applicable to private litigants.[79]  When the FTC seeks an injunction

---

[77] *See United States v. United Mine Workers*, 330 U.S. 258, 301 (1947) (district court properly issued and extended an *ex parte* Temporary Restraining Order to preserve the status quo while the government's contempt motion could be heard).

[78] *See, e.g., FTC v. Chierico*, Civ. No. 96-1754  (S.D. Fla. June 23, 1998) (*ex parte* TRO ordering asset freeze, receiver, immediate access to premises, expedited discovery, mandatory financial disclosures, and other equitable relief pending contempt hearing), *aff'd. McGregor v. Chierico*, 206 F.3d 1378, 1381 (11th Cir. 2000). *See also FTC v. Gumpel*, Civ. No. 97-01114 (E.D. Va. Jan. 10, 2007) (*ex parte* TRO ordering asset freeze, appointment of a receiver, mandatory financial disclosures, and expedited discovery); *FTC v. Zuccarini*, Civ. No. 01-04854 (E.D. Pa. Dec. 21, 2006) (*ex parte* TRO ordering asset freeze, expedited discovery, and mandatory financial disclosures); *FTC v. Neiswonger*, Civ. No. 96-02225 (E.D. Mo. July 17, 2006) (*ex parte* TRO ordering asset freeze, appointment of temporary receiver, mandatory financial disclosures, foreign asset repatriation, expedited discovery, and other equitable relief pending contempt hearing; *FTC v. Gill*, 183 F. Supp. 2d 1171, 1176-77 (C.D. Cal. 2001) (citing trial court's temporary, *ex parte* injunctive relief, including asset freeze, appointment of temporary receiver, and order authorizing immediate access and expedited discovery); *FTC v. Giving You Credit, Inc.*, No. 96-C-2088 (N.D. Ill. Mar. 4, 1997) (*ex parte* TRO ordering asset freeze, immediate access to premises, expedited discovery, mandatory financial disclosures, and other equitable relief pending contempt hearing); *FTC v. Freedom Med., Inc.*, No. C2-95-510 (S.D. Ohio Nov. 7, 1995) (*ex parte* order pending contempt hearing, allowing immediate access to premises, and continuing asset freeze and receiver).

[79] In litigation between private parties, federal courts generally apply a four-part balance-of-hardship analysis in determining whether to grant a preliminary injunctive relief. *See, e.g., Bellsouth Telecommunications v. MCImetro Access Transmission Servs.*, 425 F.3d 964, 968

pursuant to its duty to enforce a federal statute, it need only demonstrate that: 1) it is likely to succeed on the merits, and 2) the equities weigh in favor of granting the sought relief.[80]  In weighing the equities, harm to the public is presumed.[81]  Moreover, "the equities to be weighed are not . . . the usual equities in private litigation," but instead only the "public equities."[82]

### 1.   The Commission is Likely to Succeed on the Merits in its Contempt Action Against the Contempt Defendants.

To establish liability for civil contempt, the FTC must show by clear and convincing evidence that:  (1) the Order was valid and lawful; (2) the Order was clear, definite and unambiguous; and (3) the contemnors had the ability to comply with the Order.[83]  The case law also requires proof that the alleged contemnors had knowledge of the Order and violated its terms.[84]  In this case, the Commission has overwhelmingly established all of these elements.

### a.   The Order Is Valid and Lawful.

---

(11th Cir. 2005). *See also, FTC v. Affordable Media*, LLC, 179 F.3d 1228, 1233 (9th Cir. 1999) (noting that Section 13(b) "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm. . .) (quoting *FTC v. Warner Communications, Inc.*, 742 F.2d 1156,1159 (9th Cir. 1984); *FTC v. USA Beverages*, 2005 U.S. Dist. LEXIS 39075 at *14 (S.D. Fla. Dec. 5, 2005); *FTC v. Para-Link Int'l*, 2000 U.S. Dist. LEXIS 21509 at *6-7 (S.D. Fla. Nov. 21, 2000).

[80]  *FTC v. Food Town Stores*, 539 F.2d 1339, 1343-44 (4th Cir. 1976); *see also FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989); *USA Beverages*, 2005 U.S. Dist. LEXIS 39075 at *14; *FTC v. Ameridebt*, 373 F. Supp.2d 558, 563 (D. Md. 2005).

[81]  *United States v. Odessa Union Warehouse Coop.*, 833 F.2d 172, 175-76 (9th Cir. 1987).

[82]  *FTC  v. Food Town Stores*, 539 F.2d at 1343-44;  *see also Ameridebt*, 373 F. Supp.2d at 564.

[83]  *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002) (citing *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)).

[84]  *See id*; *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990).  The notice and violation requirements are elements of the traditional legal standard for civil contempt followed by other Circuits.  *See, e.g., Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995).

Judge Ferguson entered a valid and lawful Final Order against Sarcone on July 2, 1999. The Final Order made "permanent" all provisions in the July 9, 1997 Preliminary Injunction, thereby requiring Sarcone and "all persons or entities engaged in active concert or participation with . . . [him], who receive actual notice of this Order" to comply with its terms.[85]  As a litigant, Sarcone can be presumed to have knowledge of the Order.[86]  Moreover, Sarcone demonstrated his knowledge of the Order's existence through subsequent court filings in this Court and in the Eleventh Circuit, which cited and challenged aspects of the Order and the underlying decision.

### b.    The Order Is Clear, Definite, and Unambiguous.

The Order is clear and unambiguous.  The conduct provisions, originally set forth in the PI, explicitly prohibit Sarcone and those acting in concert with him who receive actual notice of the Order from making, *inter alia*, false representations regarding weight loss, size reduction, performance and efficacy, and scientific validation of performance and efficacy claims with regard to any diet-related program, service, or product.[87]  Indeed, in the aforementioned papers Sarcone filed with both this Court and in the Eleventh Circuit, he never challenged the clarity of the Order provisions.

### c.    The Contemnors had the Ability to Comply with the Order.

Sarcone had the ability to comply with the Final Order and chose not to do so.  No one forced him to re-enter the weight loss dietary supplement industry.  Nonetheless,  acting in

---

[85]  *SlimAmerica*, 77 F. Supp. 2d at 1277.

[86]  *See SEC v. Current Financial Services, Inc.*, 798 F. Supp. 802, 806 n. 11 (D.D.C. 1992) (court reasonably can assume that parties to an action have notice of its orders).

[87]  Order, citing PI § I.A.-D.

concert with LipoBan Clinic, Nature's Pharmacy, and NMD, Sarcone has sold two purported

diet products while making false weight loss, size reduction and other diet-related claims without

any scientific basis.

### 2.    The Balance of Equities Favors Entry of the Requested Injunctive Relief.

Granting the requested injunctive relief would serve the public interest by halting the

contempt defendants' contumacious misrepresentations to consumers, upholding the authority of

the Court's Order, and preserving the Court's ability to order a meaningful remedy, including

consumer redress.  Against these benefits to the public, the contemnors have no legitimate

interest in maintaining their illicit business operations in violation of a court order, dissipating

their assets, or destroying their records.[88]

### C.    LipoBan Clinic, Nature's Pharmacy, and NMD are subject to the Final Order pursuant to Fed. R. Civ. P. 65(d).

LipoBan Clinic, Nature's Pharmacy, and NMD are subject to the Final Order pursuant to

Fed. R. Civ. P. 65(d) because:  (1) they have acted in active concert or participation with

Sarcone; and (2) they have notice of the Final Order through him as a principal in their

operations.[89]  With regard to those in active concert or participation, "[n]on-parties that actively

---

[88] *See CFTC v. British American Commodity Options Corp.*, 560 F.2d 135, 143 (2d Cir. 1977) (district court erred in giving weight to defendant's interest in continuing its unlawful actions because "a court of equity is under no duty 'to protect illegitimate profits or advance business which is conducted [illegally]...'") (quoting *FTC v. Thomsen-King & Co.*, 109 F.2d 516, 519 (7th Cir. 1940)); *see also Food Town Stores*, 539 F.2d at 1344 (court should not consider "private injury" to defendant in determining whether FTC is entitled to injunctive relief).

[89] *See FTC v. Vocational Guides*, 2006-2 Trade Cas. (CCH) P75,520 (M.D. Tenn. 2006) (concluding that where defendant controlled operations of new corporate entity for which spouse served as named principal, both the new corporation and the spouse were presumed to have notice and be in active concert, triggering civil contempt liability pursuant to Rule 65(d)).

23

aid and abet a party in violating a court order may be held in contempt of court." [90]

Each of the contempt defendants in this case either has violated the Final Order directly or facilitated its violation. LipoBan Clinic and Nature's Pharmacy are the public face of the fraud, engaging in the affirmative misrepresentations that give rise to this contempt proceeding. NMD, a company wholly owned by Sarcone, aided or assisted in the scam by serving as a conduit for the ill-gotten gains of LipoBan Clinic and Nature's Pharmacy and by furnishing marketing and consulting services to LipoBan Clinic.[91] Thus, the three companies are each intertwined in Sarcone's violative practices.

### D. Entry of the Proposed Ancillary Relief, Including an Asset Freeze, Appointment of a Receiver, Evidence Preservation, and Expedited Discovery Is Necessary.

To preserve the possibility of final effective relief, the Commission seeks a TRO that: (1) freezes the contempt defendants' assets to preserve their ill-gotten gains for consumer redress; (2) appoints a receiver to marshal assets and ensure that the corporate contempt defendants operate in compliance with the Order; (3) prevents destruction of evidence and removal of property; and (4) authorizes expedited discovery. The Court has broad authority to order the requested preliminary relief, which is necessary to preserve a full and complete remedy

---

[90] *United States v. Barnette*, 129 F.3d 1179, 1182 n.5 (11th Cir. 1997). *See also Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002) ("[I]t has long been recognized that a non-party may be held in civil contempt if, and to the extent that, he knowingly aids or abets an enjoined party in transgressing a court order.").

[91] In fact, as indicated in n.64, NMD may simply serve as a conduit to direct funds to Sarcone for his personal use.

in the contempt action.[92]  Indeed, many other courts have granted similar ancillary relief in FTC

cases.[93]  An *ex parte* TRO is necessary because there is a serious risk that the contempt

defendants will destroy evidence or dissipate assets if they have advance notice of this

proceeding.

### 1.    An Asset Freeze is Necessary to Prevent Asset Dissipation.

Sarcone's concealment of his role in LipoBan Clinic and Nature's Pharmacy through the

use of front men, and his use of his company, NMD, to siphon off proceeds from the sale of his

bogus diet products, demonstrates an intent and ability to hide assets.  The requested freeze is

well within the Court's authority.[94]  Indeed, an asset freeze is appropriate even when there is

only a mere possibility of asset dissipation.[95]  In this case, Sarcone's prior conduct is replete

---

[92]  *See generally Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946); *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561-62 (5th Cir. 1987).

[93]  *See, e.g., McGregor*, 206 F.3d at 1381; *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984); *Ameridebt*, 373 F. Supp.2d 558, 565 (D. Md. 2005); *see also* cases cited, *supra*, n.78.

[94]  *See, e.g., FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996) (district court may order an asset freeze in order to make permanent relief possible); *Kemp v. Peterson*, 940 F.2d 110, 113-14 (4th Cir. 1991) (same); *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974) (asset freeze is appropriate to assure compensation to victims of fraud); *Ameridebt*, 373 F. Supp.2d at 565 (ordering asset freeze where FTC had shown possibility that defendant would dissipate assets).

[95]  *Fed. Savings & Loan Ins. Corp. v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989) (reversing district court's denial of asset freeze because requiring a showing of "likelihood" of asset dissipation was improper).  In addition to a provision directing the contempt defendants not to dissipate or conceal assets, the proposed TRO includes a provision directing financial institutions to freeze the assets of the contempt defendants that are in their custody or control.  This Court has the authority to direct its order to such third parties to preserve assets that are easily dissipated and may be difficult or impossible to trace.  *See United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965); *Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995); *Waffenschmidt v. Mackay*, 763 F.2d 711, 714 (5th Cir. 1985).

with instances in which he concealed or lied about assets, in particular assets located in overseas accounts.[96]

Specifically, after the asset freeze was imposed, the Court discovered that Sarcone had "transferred the ill-gotten gains to a foreign country in an effort to place these funds beyond the Court's reach for consumer redress."[97]  Although the assets involved were at least $805,000, Sarcone claimed, without written documentation, that the purpose of the transfer was to repay $200,000 to two Bahamian investors.[98]  The Court ordered the assets repatriated on April 8, 1997, finding that Sarcone's "undocumented assertions regarding repayment of investors were not believable" and that the transfer was "a fraudulent conveyance to avoid creditors."[99]

### 2. Appointment of a Receiver is Necessary to Ensure Compliance with This Court's Orders.

The appointment of a receiver would ensure that the ill-gotten gains of Sarcone and his various corporations are found and paid as redress to the fullest extent possible.  In addition, a receiver is necessary to wind up businesses that likely cannot be operated lawfully and profitably, including insuring that business property – for instance, bottles of Nature's Pharmacy's diet product – are not once again used for fraudulent purposes.[100]

---

[96]  *See SlimAmerica*, 77 F. Supp. 2d at 1274-1275.

[97]  *Id.* at 1265.

[98]  *Id.* at 1274-1275.

[99]  *Id.* at 1275.  Even two years later, following issuance of the Final Order, the receiver was still attempting to recoup those overseas assets.  Final Report and Motion by Thomas Tew (May 1, 2002) at Docket Entry 212.

[100]  To achieve this goal, the Receiver's powers include the authority to "take exclusive custody, control and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated."  This includes assets and documents

The appointment of a receiver is appropriate "in circumstances where dissipation of assets and destruction of documents are foreseeable," and where there is "'fraud, or the imminent danger of property being lost, injured, diminished in value or squandered . . . .'"[101]  Here, the contempt defendants are actively engaging in fraud, and will continue to do so if the instruments of their fraud are not placed in receivership.  Without the oversight of a receiver, their operations will continue to cause great consumer harm.

### 3.     An Evidence Preservation Order is Necessary to Prevent Spoliation.

In order to prevent the destruction of evidence, the Commission seeks an order to preserve all documents, including electronic records, relating to the contempt defendants' violative practices.[102]  As discussed in Section II.B.1, Sarcone has repeatedly demonstrated his lack of respect for the judicial process.  He has disregarded past orders concerning evidence preservation issued by this Court, including the July 9, 1997 Preliminary Injunction's mandate that he deliver evidence regarding *SlimAmerica*, including bank records, to the court-appointed

---

at the purported business address of Nature's Pharmacy, 2200 N.W. Boca Raton Blvd, #105, Boca Raton 33431.

[101] *In re Nat'l Credit Mgmt. Group, LLC*, 21 F. Supp. 2d 424, 463 (D. N.J. 1998) (quoting *Leone Indus. v. Associated Packaging Inc.*, 795 F. Supp. 117, 120 (D. N.J. 1992)); *see also FTC v. American Nat'l Cellular, Inc.*, 810 F.2d 1511, 1514 (9th Cir. 1987) (affirming appointment of receiver in FTC action); *U.S. Oil & Gas*, 748 F.2d at 1432 (same); *SEC v. Bowler*, 427 F.2d 190, 198 (4th Cir. 1970) (district court erred in refusing to appoint a receiver where defendants had used business to commit fraud); *Ameridebt*, 373 F. Supp.2d at 565 (appointing receiver in FTC action).

[102] An order to preserve evidence would not place any significant burden on the contempt defendants. *See, e.g.*, *SEC v. Unifund SAL*, 910 F.2d 1028, 1040 n.11 (2d Cir. 1990) (characterizing such orders as "innocuous").

27

receiver.[103]  As this Court noted, "Sarcone admittedly 'tossed' all of the subject materials without notice to the [r]eceiver," who learned of their existence months later due to subsequent case filed against Sarcone in the Bahamas.[104]  Sarcone also has demonstrated a penchant for hiding his identity through subterfuge.  In the present matter, for instance, he has used "front men" such as George Forgione and Leonard Haimes, as well as the alias, "Dave Johnson," to hide his participation in his illicit schemes.[105]

### 4. Expedited Discovery Is Necessary To Preserve Documents And Marshal Assets.

The FTC also requests leave of Court for expedited discovery, including immediate financial disclosures from the contemnors, depositions of corporate officers, employees, and related third parties, and subpoenas for documents.  This expedited discovery is necessary to ensure a full accounting of the contemnors' assets and any potentially relevant documents in their possession.  In addition, it will allow the FTC to determine whether Sarcone has obtained the $5 million performance bond required by the Final Order.  The existence or non-existence of the bond will have an obvious bearing on the available relief for the contempt defendants' contumacious conduct.

Federal Rules of Civil Procedure 26(d), 33(a), and 34(b) allow the Court to alter the standard provisions and time frames that govern depositions and production of documents, and

---

[103]  *SlimAmerica*, 77 F. Supp.2d at 1274.

[104]  *Id.*

[105]  *See, e.g.*, PX 7 (Lewis), ¶3, Atts. A, B, and D; PX 2 (Coopersmith), ¶2.

the Court has broad and flexible authority in equity to grant such preliminary relief.[106]

Moreover, numerous federal courts have ordered similar expedited discovery orders at the outset of FTC proceedings.[107]  Thus, the relief sought herein is fully warranted and within the Court's equitable powers.

### E.   *Ex Parte* Relief is Necessary to Preserve Complete Equitable Relief.

The Court has the authority to enter the requested Temporary Restraining Order without notice to the contempt defendants because prior notice may well eviscerate the Court's ability to enter complete relief as it may deem appropriate.[108]  "District courts are afforded wide discretion in fashioning an equitable remedy for civil contempt."[109]  Pursuant to Federal Rule of Civil Procedure 65, a Temporary Restraining Order may be granted without notice to defendants if "immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition . . . ."  FED. R. CIV. P. 65(b).  Entry of an order without notice to a defendant is proper where there is a risk that the defendant will destroy

---

[106]  *See Porter*, 328 U.S. at 398; *Physicians Interactive v. Lathian Sys., Inc.*, 69 U.S.P.Q 2D (BNA) 1981 (E.D. Va. 2003) (ordering expedited discovery and noting that the Federal Rules of Civil Procedure "give this Court the power ... to expedite the time for responding to the discovery sought"); *Federal Express Corp. v. Federal Espresso, Inc.*, No. Civ.A.97CV1219RSPGJD, 1997 WL 736530 at *2 (N.D.N.Y. Nov. 24, 1997) (early discovery "'will be appropriate in some cases, such as those involving requests for a preliminary injunction'") (quoting commentary to FED. R. CIV. P. 26(d)).

[107]  *See supra* n.78.

[108]  At the outset of this case, using its well-established equitable authority, this Court issued an *ex parte* Temporary Restraining Order, which, among other things, restrained Sarcone from destroying, altering, or transferring his business records, granted the FTC access to Sarcone's business records, appointed a receiver, and allowed expedited discovery.  TRO (January 27, 1997), Court Docket at 9.  The same logic applies to the present request for *ex parte* relief.

[109]  *McGregor*, 206 F.3d at 1385, n.5.

assets or evidence.[110]

     As set forth above and in the Certification of Counsel submitted in support of this Motion, substantial evidence demonstrates that immediate asset dissipation and record destruction is likely to occur if the Court notifies the contempt defendants of the Commission's contempt filings before service of the requested Temporary Restraining Order.  The highly deceptive nature of Sarcone's diet scams, his longstanding defiance of court orders, his shifting of funds among domestic and overseas accounts, and his use of various corporate shills all demonstrate the strong need for *ex parte* relief.  As set forth fully in the Certification of Counsel, it is the FTC's experience that defendants engaged in similar, fraudulent schemes dissipate their assets and/or destroy records if given prior notice of a TRO.  Indeed, many courts have issued similar *ex parte* orders in FTC cases for this reason.[111]

---

[110] *See, e.g., Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678-79 (1974).

[111] *See supra* n.78.

30

## V.     CONCLUSION

For the foregoing reasons, the FTC requests that the Court grant its *Ex Parte* Motion for

Temporary Restraining Order and Other Equitable Relief.


Dated: August 21, 2007                    Respectfully submitted,



WILLIAM BLUMENTHAL

General Counsel


DAVID R. SPIEGEL (A5500892)
CAROLYN L. HANN (A5501119)
Attorneys for Plaintiff
Federal Trade Commission
601 New Jersey Avenue, N.W.
Suite NJ-2122
Washington, DC 20580
Telephone: (202) 326-3281 (Spiegel); 2745 (Hann)
Fax: (202) 326-2558
dspiegel@ftc.gov; chann@ftc.gov


31