UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:97-CIV-06072-DLG

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| SLIMAMERICA, INC., *et al.*, | ) |
| Defendants. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S *EX PARTE* MOTION FOR ORDER TO SHOW CAUSE WHY
DEFENDANT FRANK J. SARCONE AND THREE BUSINESS ENTITIES
<u>UNDER HIS CONTROL SHOULD NOT BE HELD IN CONTEMPT</u>

## Table of Contents

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      Original Commission Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      Contempt Defendants and Their Violative Business Practices . . . 6

                1.      Frank Sarcone: A Career Recidivist . . . . . . . . . . . . . . . . . 6

                2.      LipoBan Clinic, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                3.      Nature's Pharmacy, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                4.      National Marketing Data, Inc. (NMD) . . . . . . . . . . . . . 14

III.    LAW AND DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        A.      The FTC Has Met the Legal Standard for Finding Civil Contempt
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                1.      The Order is Valid and Lawful. . . . . . . . . . . . . . . . . . . . . 16

                2.      The Order is Clear, Definite, and Unambiguous. . . . . . . 17

                3.      The Contemnors had the Ability to Comply with the Order
                        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                        a.      By Making False Weight Loss Claims, the
                                Contempt Defendants Have Violated Section I.A. of
                                the Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                        b.      By Making False Size Reduction Claims, the
                                Contempt Defendants Have Violated Section I.B. of
                                the Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                        c.      By Making False Performance and Efficacy Claims,
                                the Contempt Defendants Have Violated Section
                                I.C. of the Order. . . . . . . . . . . . . . . . . . . . . . . . . . 20

                        d.      By Making False Scientific Validation Claims, the
                                Contempt Defendants Have Violated Section I.D. of
                                the Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4.      Sarcone's Business Entities are Also Violating the Order 21

B.      The Contempt Defendants Should be Sanctioned for Their
        Contumacious Conduct.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Table of Authorities**

<u>Cases</u>

*Cablevision Sys. Corp. v. Muneyyirci*, No. 90-2997, 1995 WL 362541 (E.D.N.Y. Aug. 24, 1990 )
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297 (11th Cir. 1991). . . . . . . . . . . . 16

*FTC v. Gem Merchandising*, 87 F.3d 466 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*FTC v. Figgie Int'l Inc.*, 994 F.2d 595 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*FTC v. H.N. Singer*, 668 F.2d 1107 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*FTC v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d. 1263 (S.D. Fla 1999) (No. 97 Civ. 6072). . . .5,6, 8, 9,
17

*FTC v. SlimAmerica, Inc.*, 99-12574-BB (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*FTC v. Vocational Guides*, 2006-2 Trade Cas. (CCH) P75,520 (M.D. Tenn. 2006) . . . . . . . . . 21

*Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418 (1911). . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . 21

*Howard Johnson Co. v. Khimani*, 892 F.2d 1512 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 16

*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000)). . . . . . . . . . . . . . . . . . . . . . . 16, 22, 23

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Roe v. Operation Rescue*, 54 F.3d 133 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*SEC v. Current Financial Services, Inc.*, 798 F. Supp. 802 (D.D.C. 1992) . . . . . . . . . . . . . . . 17

*Shillitani v. United States*, 382 U.S. 364 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Barnette*, 129 F.3d 1179 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. City of Miami*, 195 F.3d 1292 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. One Parcel of Land Located at 7326 Highway 45 North*, 965 F.2d 311 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987). . . . . . . . . . . . . . . . . . . 16

<u>Statutes, Rules, &Regulations</u>

Fed. R. Civ. P. Rule 60(b) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. Rule 65(d) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**I.**     **INTRODUCTION**

The Federal Trade Commission ("FTC" or "Commission") moves the Court to issue an Order To Show Cause[1] against **Frank Sarcone, a/k/a Frank Sarcona and Dave Johnson**, a career recidivist who is once again marketing diet products via outrageous, false weight loss claims in violation of a court order.[2]  The July 2, 1999 Final Judgment for Permanent Injunction[3] ("Final Order" or "Order") in this case is just one of at least 14 federal court and state administrative orders issued against Sarcone.  Treating the Order as if it were a harmless scrap of confetti, Sarcone has continued making false weight loss and other diet-related claims throughout the eight years since the Order was issued.

Specifically, Sarcone blatantly has violated core provisions of the Final Order which enjoin him from making false representations as to:  (1) weight loss; (2) body size reduction; (3) performance and efficacy; and (4) scientific validation of performance or efficacy claims with

---

[1]  In addition to the Motion to Show Cause, the FTC is simultaneously filing the following *ex parte* motions: (1) Motion for Temporary Restraining Order, Preliminary Injunction, and Other Equitable Relief, Pending Decision on Plaintiff's Motion for a Civil Contempt Order; (2) Motion for Exception to Local Rule Setting Page Limitation for Legal Memoranda; and (3) Motion to Temporarily Seal Filings.  **The combined filings, including this pleading, are exempt from the Court's mandatory electronic filing requirement for two reasons:  (1) they are subject to a motion to seal; and (2) they involve a request for an emergency hearing.  CM/ECF Adm. Procedures, Rules 5A and 5F.**

[2]  The facts and evidence supporting this motion are largely identical to those set forth in the accompanying Memorandum in Support of our Motion for an *Ex Parte* Temporary Restraining Order.  Hence, for the Court's convenience, we are repeating certain portions of our factual recitation and citing to a joint volume of the FTC's Exhibits that comprise evidence in support of both of these motions.  *See* Exhibits to Memorandum of Points and Authorities in Support of Plaintiff's *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction, and Other Equitable Relief, Pending Decision on Plaintiff's Motion for a Civil Contempt Order (volumes I-III).  The exhibits are hereafter cited as "PX," followed by exhibit number, paragraph, and Attachment citation.

[3]  Judge Ferguson issued the Order following a six-day trial at which Sarcone testified and was present throughout.  As noted, *infra*, Section II.A., earlier proceedings in this case included an *ex parte* Temporary Restraining Order and a subsequent Preliminary Injunction.  The provisions of the Preliminary Injunction were subsequently incorporated into the Final Order.

regard to any diet-related program, service, or product.  Sarcone has perpetuated his order violations through three companies he controls: **LipoBan Clinic, Inc.,** **Nature's Pharmacy, Inc.,** and **National Marketing Data, Inc.**

LipoBan Clinic began advertising and marketing bogus diet products in February 2000. When the company's business imploded after the execution of a search warrant by the Office of the United States Attorney for the Southern District of Florida on October 21, 2004, Sarcone began marketing his diet scam through Nature's Pharmacy.[4]  Nature's Pharmacy's operations continue to date, and recent sales data indicate a growth in the company's business. Collectively, the two companies have bilked consumers out of more than $6 million in violation of the Order.   National Marketing Data, Inc. ("NMD") – a company owned solely by Sarcone – has received at least $1.1 million in proceeds from the operations of LipoBan Clinic and Nature's Pharmacy.  NMD provided LipoBan Clinic with marketing and consulting services.

Sarcone, LipoBan Clinic, Nature's Pharmacy, and NMD (collectively, the "contempt defendants" or "contemnors") have disseminated advertisements that appear in national magazines and major metropolitan newspapers.  The ads continue the pattern of outrageously false representations which gave rise to the underlying case.  For example, the ads include claims such as:

- "**<u>allows you to lose all of your excess weight and inches without torturous dieting or changing what you eat whatsoever</u>**" (emphasis in original)[5]; and

---

[4]  The Commission has been advised that a criminal investigation related to the LipoBan Clinic search warrant remains active.

[5]  PX 7 (Lewis), ¶4, Atts. E and F (LipoBan Clinic advertisements for LipoBan published in *The Plain Dealer* (Cleveland), Sept. 18, 2002 and *The Detroit News,* Sept. 18, 2002).

- **"With the rapid weight loss it creates, Without Changing What You Eat, you're Guaranteed to lose a pound a day or more until all your excess weight & inches are gone . . . ."** (emphasis in original).[6]

The contemnors also represent that scientific studies validate their performance and efficacy claims.

In fact, the contempt defendants have no scientific basis for their claims. Indeed, Dr. Edward Blonz, a diet and nutrition expert retained by the Commission to examine the validity of the contempt defendants' weight loss and other diet-related representations, concluded after a thorough examination of the relevant scientific evidence that the contempt defendants' claims are false.

In light of the contempt defendants' contumacious acts, the Commission has returned to this Court to institute proceedings for appropriate civil contempt sanctions. Specifically, the Commission respectfully requests an order directing Sarcone, LipoBan Clinic, Nature's Pharmacy, and NMD to show cause why they should not be held in civil contempt for violating this Court's Final Order.

In addition, the Commission seeks a contempt order requiring the contempt defendants to compensate consumer victims for the harm caused by their false representations in the marketing of LipoBan and Nature's Fat-Fighting Secret, the two diet products described herein. A proposed Order to Show Cause is lodged with this application.

Finally, the Commission will file shortly a motion pursuant to Fed. R. Civ. P. 60(b) for

---

[6] PX 7 (Lewis), ¶6, Atts. H, I, and J (Nature's Pharmacy advertisement for Nature's Fat Fighting Secret, published in *The San Francisco Chronicle*, Feb. 21, 2007, *The Los Angeles Times*, Feb. 26, 2007, and *The Wilmington Star News* (North Carolina), May 5, 2007).

modification of the existing Order.[7]  Given the contempt defendants' egregious violations of the

Final Order's prohibitions against making false weight loss, size reduction, performance and

efficacy, and scientific validation representations with regard to any diet-related program,

service, or product, stronger relief — in the form of a ban — is now warranted.  Specifically, the

Commission will seek an Order modification banning Sarcone from advertising, marketing,

offering for sale, or sale of any drugs, foods (including dietary supplements), or devices

intended, designed, or promoted to affect the structure or function of the human body.  The

Commission also will seek enhanced reporting and record keeping requirements in order to

monitor Sarcone's future compliance.

## II.    STATEMENT OF FACTS

### A.    Original Commission Action

On January 27, 1997, the FTC filed a complaint alleging that Sarcone, SlimAmerica, Inc.,

and another individual defendant, Robert Wyman,[8] violated Sections 5 and 12 of the FTC Act,

15 U.S.C. §§ 45 and 52, by deceptively advertising, marketing, and selling "weight-loss pills" as

the "Super-Formula" program ("Super-Formula").   The complaint asserted that from September

29, 1995 until January 27, 1997, in a national advertising campaign, the defendants hawked

Super-Formula, a set of three dietary supplements purported to cause astounding weight loss,

including "blast[ing] all . . . excess fat" and "absolutely guaranteed to blast up to 49 pounds off

you in only 29 days," without any change in diet or exercise.[9]

---

[7] The Commission will file the motion to modify after meeting and conferring with opposing counsel pursuant to Local Rule 7.1.

[8] There is no evidence linking Wyman to Sarcone's contumacious conduct.

[9] Compl. ¶4.

4

On January 27, 1997, the Court (Ferguson, J.) issued an *ex parte* Temporary Restraining Order, including an asset freeze, expedited discovery, and appointment of a receiver, against Sarcone and his co-defendants.  Subsequently, on July 9, 1997, the Court issued a Preliminary Injunction ("PI"), continuing all of the provisions in the TRO and adding new restrictions, including prohibiting the defendants from making false or misleading representations regarding: (1) weight loss; (2) reduction in body size; (3) performance and efficacy; and (4) scientific validation of performance or efficacy claims with regard to any diet-related program, service, or product.[10]

On July 2, 1999, following a six-day trial, Judge Ferguson issued a decision which explicitly adopted all of the factual and legal bases underlying the Commission's complaint.[11]  At the conclusion of the decision, Judge Ferguson set forth a short order stating that the PI "is hereby made permanent."[12]  Thus, the Final Order incorporated the conduct restrictions set forth in the PI.[13]  The Court also found Sarcone and his co-defendants jointly and severally liable for $8,374,586 for consumer redress and costs.[14]

### B.    Contempt Defendants and Their Violative Business Practices

---

[10]  PX 9 (Prelim. Inj. With Asset Freeze And Other Equitable Relief), §I.A-D.

[11]  PX 8 (*FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263 (S.D. Fla. 1999)).

[12]  *Id.* at 1277.

[13]  Accordingly, citations to the PI are citations to the Final Order.

[14]  PX 8 (*SlimAmerica*, 77 F. Supp. 2d at 1277).  After receiving the Final Order, Sarcone filed, *pro se*, a motion for a stay in this Court and an appeal to Eleventh Circuit. Mot. By Frank Sarcone For Stay And Expedited Ruling, *SlimAmerica*, 77 F. Supp. 2d. 1263 (No. 81299-176); *FTC v. SlimAmerica, Inc.*, 99-12574-BB (11th Cir. 1999).  On November 24, 1999, the Court of Appeals dismissed Sarcone's appeal as untimely filed.  *FTC. v. SlimAmerica, Inc.*, 99-125744-BB.

### 1.    Frank Sarcone: A Career Recidivist

As Judge Ferguson observed in his decision, Sarcone has a "long record of assorted fraudulent schemes which have bilked thousands of victims out of millions of dollars in more than a dozen states."[15]  Sarcone's forays into the weight loss industry started as early as 1983 with his dietary supplement scam, "Forever Thin" (1983-1985).  He next moved on to "The Ultimate Solution Diet Program" (1985-1991).  The marketing tactics for each of these diet scams reveals a pattern of making fraudulent, outlandish advertising claims about weight loss and scientific validation that Sarcone has continued to the present day.[16]  In addition, Sarcone was a principal in a scam involving a bogus gas selling device called Petromizer.[17]  In each instance, his scams thrived until they were halted by federal and state law enforcement actions.[18]

As discussed below, undeterred by the Final Order, Sarcone quickly resumed his fraudulent conduct in the diet industry – first, via LipoBan Clinic and more recently, through Nature's Pharmacy.  One notable difference – an apparent "lesson" learned from the underlying case – is that Sarcone now attempts to obscure his role in his diet scams, using others to front his companies.  In addition, instead of using the business offices of his companies, Sarcone now operates his businesses from his residential address, 4001 N. Ocean Blvd, B1503, Boca Raton,

---

[15]  PX 8 (*SlimAmerica*, 77 F. Supp. 2d at 1265).

[16]  For example, Forever Thin advertisements promised that users would lose "up to six pounds in the first 48 hours, up to 12 pounds every two weeks thereafter" with "permanent" results.  PX 8 (*SlimAmerica*, 77 F. Supp. 2d at 1270).  Ultimate Solution Diet Program ads asserted that "[a]fter the first week, some individuals will see losses of up to 35 pounds" and that obese individuals could "easily drop 40, 65, and even 100 pounds or more."  *Id.* at 1271.

[17]  *Id.*

[18]  Even at the time of the underlying action, Sarcone was subject to at least 13 state court and federal administrative orders.  *Id.*

6

Florida.[19]

### 2.   LipoBan Clinic, Inc.

According to Florida public records, LipoBan Clinic is a defunct Florida corporation which was incorporated on March 14, 2000 and dissolved on December 7 of the same year.[20]  In fact, LipoBan Clinic continued to do business until the October 21, 2004 execution of a criminal search warrant at its place of business, 22610 SW 66th Avenue in Boca Raton, Florida.[21]

Although LipoBan Clinic's purported president, according to Florida corporate records, was George Forgione, Sarcone was an active, hidden principal in the company.  Glenna Coopersmith (a/k/a Ginger Cooper), an ex-employee of LipoBan Clinic, who worked at LipoBan Clinic for two and a half years, states in a sworn declaration that Sarcone held himself out as a principal of the company when he hired her and was responsible for the marketing of LipoBan

---

[19]  *See, e.g.*, PX 2 (Coopersmith), ¶6 (testimony by ex-employee of LipoBan Clinic that Sarcone worked at his home, receiving faxes and emails) PX 7 (Lewis), ¶¶10(f), Att. R (form for Sarcone's company, National Marketing Data, listing 4001 N. Ocean Blvd address as corporate address); *Id.*, ¶17, Att. V (authorization form for National Marketing Data's corporate account at Wachovia Bank, listing 4001 N. Ocean Blvd. address); PX 6 (Dalsbo), ¶¶5-6 (testimony of postal employee stating that as recently as July 23, 2007, Sarcone received mail for his company, Nature's Pharmacy, at the 4001 N. Ocean Boulevard address).

At his pretrial deposition on September 3, 1997, Sarcone identified the 4001 North Ocean Blvd. address as his residence.  PX 2 (Lewis), ¶31(a), Att. CC, 398, 410.  According to a postal employee, he continues to occupy the same apartment.  PX 6 (Dalsbo), ¶¶ 2-3.

[20]  *See* PX 7 (Lewis), ¶3(a), Att. A.

[21]  *Id.*  Prior to its dissolution LipoBan Clinic adopted an alternative legal identity – National Pharmaceuticals, Inc.  PX 7 (Lewis), ¶10(b), Att. N (IRS Application for Employer Identification Number on behalf of National Pharmaceuticals, signed by LipoBan Clinic's purported principal, George Forgione, listing as response to question regarding "Trade Name of Business," "LipoBan Clinic, Inc.").  National Pharmaceuticals was incorporated as a Florida corporation in September 2000 and subsequently changed its name to 1515 Investment Holdings, Inc.  PX 7 (Lewis), ¶3 (c), Att. C.  During 2002 and 2003, National Pharmaceuticals received at least $323,301 from LipoBan Clinic, and, in turn, paid at least $108,000 to LipoBan Clinic.  PX 7 (Lewis), ¶13(b).

Clinic's diet products, including setting up newspaper ads.[22]  Coopersmith also indicates that Sarcone used the name, "Frank Sarcona," which he had previously used in SlimAmerica, as well as a new alias, "Dave Johnson."[23]   In addition, a codicil to a will executed by Forgione identifies "Frank Sarcona" as Forgione's "partner-in-fact" and "unofficial business partner" in LipoBan Clinic.[24]

Further evidence of Sarcone's role as a principal of LipoBan Clinic is contained in business records that were seized during the execution of the criminal search warrant in October 2004.  The records include various invoices and faxes from LipoBan Clinic's suppliers, all addressed to Sarcone using either his "Frank Sarcona" or "Dave Johnson" aliases.[25]  Finally, Sarcone received at least 31 separate payments, totaling **$873,974** from LipoBan Clinic, through his company, NMD.[26]  Notations on many of the checks, as well as LipoBan Clinic invoices, indicate that the payments were for "consulting" and "marketing" services on behalf of LipoBan Clinic.[27]

---

[22]  PX 2 (Coopersmith), ¶¶ 2, 5.

[23]  PX 8 (*SlimAmerica*, 77 F. Supp. 2d at 1266 n.1); PX 2 (Coopersmith), ¶2.  Further, the former wife of George Forgione, Sarcone's partner, has stated that her husband identified Sarcone as his partner.  PX 3 (Marjorie Smith), ¶5.

[24]  PX 2 (Coopersmith), Att. 1.

[25]  PX 7 (Lewis), ¶10(i)(j), Atts. DD, EE.  For example, a September 10, 2001 fax cover page from LipoBan Clinic's media placement contractor, Novus Print Media, addressed to "Dave Johnson, LipoBan Clinic" asks him to confirm the company's payment status on past due invoices.  Several other Novus invoices from that time period similarly list "Dave Johnson" as the contact for LipoBan Clinic.  *Id.*

[26]  PX 7 (Lewis), ¶18(a).  *See* Section II.B.4., *infra*, for a discussion of Sarcone's connection to NMD.

[27]  PX 7 (Lewis), Att. M.

8

The active ingredient in the LipoBan dietary supplement was chitosan, a derivative of chitin. Chitin was one of the discredited ingredients in SlimAmerica's Super Formula product.[28] Undeterred by this reality, LipoBan Clinic made numerous claims touting the purported benefits of its product, including:

- "**. . . allows you to lose all of your excess weight and inches without torturous dieting or changing what you eat whatsoever.**" (emphasis in original);[29]

- "With LipoBan in your system, dietary fat will be zapped before it has a chance to latch on to your stomach, hips, thighs, and rear-end!";[30]

- ". . . numerous clinical studies have been successfully completed on this incredible product . . .";[31] and

- "'I went from 310 lbs. to 190 lbs. in just 90 days . . .   I lost 4 ½" on my neck, 14" on my waist . . .' Jerry E. Brown, Ph.D."[32]

LipoBan Clinic's ads appeared in numerous newspapers and magazines throughout the United States.  The publications included *The Washington Post, Parade Magazine, Women's World, Family Circle, The Plain Dealer* (Cleveland), and *The Detroit News*.[33]

Credit and debit card sales for LipoBan Clinic[34] indicate that the company generated at

---

[28]  PX 8 (*SlimAmerica*, 77 F.Supp. 2d at 1266, 1274).

[29]  PX 7 (Lewis), Atts. E, F.

[30]  *Id.*

[31]  *Id.*

[32]  PX 7 (Lewis), Atts. E, F, G.

[33]  *Id.*

[34]  As discussed further in Section II.B.3., *infra*, First Data Corporation also processes credit and debit card transactions for Nature's Pharmacy.

least $5.2 million from its contumacious conduct.[35]  Records from LipoBan Clinic's corporate

bank accounts indicate that its business ceased after execution of the search warrant on October

21, 2004.[36]

###      3.      Nature's Pharmacy, Inc.

Nature's Pharmacy is an active Florida corporation incorporated by Melodie Farr on

August 26, 2002.[37]  The company's most recent ads and mailings list its business address as 2200

N.W. Boca Raton Boulevard, #105, Boca Raton, FL 33431.[38]

On April 18, 2005 – less than six months after the execution of the search warrant against

LipoBan Clinic – Sarcone was added to the corporate roster as Nature's Pharmacy's registered

agent and sole officer and director.[39]  Subsequently, on April 29, 2006, Natural Pharmaceuticals,

---

[35]  PX 7 (Lewis), ¶23(c).  According to the documents produced by First Data Corporation, the company that processed LipoBan Clinic's credit and debit card transactions, the company's sales, less returns and credits, were $6,198,886 for 2002-2004.  Id.  Although LipoBan Clinic sold other nutritional products besides LipoBan, an analysis of LipoBan Clinic's advertising by FTC investigator Ronald D. Lewis indicates that LipoBan was at all times the company's primary product.  Id.  Even if just 50% of LipoBan Clinic's credit and debit card sales are attributed to LipoBan – an extremely conservative estimate given the product's prominent role in the company's marketing – consumer injury for this three year period would be $3,099,443.  Id.  Assuming the same sales pattern for 2000-2001 – a period when LipoBan Clinic was equally active – total credit and debit card sales for LipoBan from 2000-2004 would be **$5,165,739**.  Id.  This figure is likely an underestimate since it omits receipts LipoBan Clinic received from check and cash sales for the entire 2000-2004 period.

[36]  PX 7 (Lewis), ¶3(a), Att. A.

[37]  PX 7 (Lewis), ¶3(b), Att. B.

[38]  PX 7 (Lewis), ¶6, Atts. H, I, and J (Nature's Fat-Fighting Secret ads); ¶8, Att. L (marketing materials sent to consumers).  However, this address is occupied by a third party, Instamail, which packages and mails Nature's Pharmacy's products, and, in addition, receives the company's mail.  PX 7 (Lewis), ¶30; PX 4 (Rother), ¶¶10-11; PX 5 (Watson), ¶¶3-6.

[39]  PX 7 (Lewis), ¶3(b).

LLC, replaced Sarcone as the company's sole principal.[40]  On May 10, 2006, in yet another

change, Leonard Haimes, a 79-year old doctor who testified as Sarcone's expert witness during

the preliminary injunction hearing in this case in 1997,[41] was substituted for Natural

Pharmaceuticals, LLC.[42]

Notwithstanding Haimes' designation as sole officer, Sarcone continues to actively

participate in and control Nature's Pharmacy.  Sarcone's involvement is evidenced by the flow

of substantial sums of Nature's Pharmacy monies to his company, NMD – the same company he

used as a conduit for proceeds from the LipoBan Clinic operation.  Specifically, bank records

for NMD's corporate account at Wachovia Bank, which Sarcone controls,[43] show that between

January 15, 2006 and March 30, 2007[44] there were at least 64 separate deposits, totaling

**$217,735**, involving monies from Nature's Pharmacy.[45]  More than half of these deposits (34),

---

[40]  *Id.*  Plaintiff has been unable to locate incorporation records for Natural Pharmaceuticals, LLC, either in Florida or in any other state.  Based on Sarcone's earlier conduct in this case, there is a possibility that the company is based overseas.

[41]  At the preliminary injunction hearing, among other things, Haimes asserted that with respect to diet products like SlimAmerica's Super Formula, "in my medical and clinical judgment, double blind studies don't mean a thing."  PX 7 (Lewis), Att. BB at 19.  Instead, Haimes preferred to rely on "patient outcome studies [which] fall into the area of testimonials."  *Id.*  On March 26, 1999, Haimes was reprimanded by the Florida Board of Medical Examiners, ordered to submit to a professional examination, and fined $1,500 for failure to keep adequate medical records.  PX 7 (Lewis), ¶24.

[42]  PX 7 (Lewis), ¶3(b).  Sarcone continues to be listed as Nature's Pharmacy's registered agent.  *Id.*

[43]  PX 7 (Lewis), ¶¶16, 18,  Att. V.

[44]  March 30, 2007 was the most recent date for which there were records.

[45]  PX 7 (Lewis), ¶18(b).  Nature's Pharmacy's total credit and debit card sales, less returns, for the period from February 28, 2006 to May 30, 2007 were $677,273.  PX 7 (Lewis), ¶22(a).  The $217,735 in payments to Sarcone represent 32% of this amount.

totaling **$114,000**, were made during the period when Haimes purportedly replaced Sarcone as

the company's principal, including one as recently as March 29, 2007, for $27,000.[46]   Sarcone's

involvement with NMD is further highlighted by the declaration of a Postal Service employee

who delivers mail to his 4001 N. Ocean Blvd. address, who states that as recently as July 23,

2007, Sarcone received a Nature's Pharmacy mailing.[47]

   As in the case of LipoBan Clinic, the advertisements for Nature's Fat-Fighting Secret, the

dietary supplement product sold by Nature's Pharmacy, contain outrageous weight loss and

related claims, including:

- **"Without Changing What You Eat, you're Guaranteed to lose a pound a day or more until all your excess weight & inches are gone . . .** [sic]" (emphasis in original);[48]

- "It Stops Hunger, Increases Energy & Prevents Fat Calories From Being Absorbed By Your Body";[49]

- "All of the natural ingredients in Nature's Fat-Fighting Secret have been proven and verified by dozens of independent clinical studies to be safe and effective for weight loss";[50]

- "**I lost 126 pounds in just 120 days!** . . . In the first 30 days I lost 44 3/4 pounds eating the foods I love!  No diet plans, no counting calories . . ." (emphasis in

---

[46]  PX 7 (Lewis), ¶18(b) and Att. FF.  Significantly, an earlier deposit, dated May 15, 2006, made payable to NMD for $5,000, identifies the payor in embossed typeface as "Frank Sarcona/Naturespharmacy Inc. [sic]," thus belying the assertion in Nature's Pharmacy's corporate filings that Sarcone was no longer the principal at this time.  PX 7 (Lewis), ¶18, Att. X.

[47]  PX 6 (Dalsbo), ¶6.

[48]  PX 7 (Lewis), Atts. I, J.

[49]  PX 7 (Lewis), Atts. H, I, J.

[50]  *Id.*

original).[51]

Nature's Pharmacy ads for Nature's Fat-Fighting Secret have appeared in publications such as the *Los Angeles Times* and the *San Francisco Chronicle*.[52]

Nature's Pharmacy's average monthly sales for credit and debit card purchases during the period between February 28, 2006 and May 30, 2007 indicate that the company's sales are increasing at a substantial rate. For instance, during the five month period between August and December 2006, Nature's Pharmacy's sales averaged $44,233 per month; in contrast, during the five month period between January and May 2007, sales averaged $76,013 per month.[53] Since the company also is receiving monies through check and cash sales – evidenced by its receipt of a check through the FTC's undercover purchase – its annual sales for the current year likely will exceed $1 million.[54]

### 4.    National Marketing Data, Inc. (NMD)

NMD is a defunct Florida corporation that was active from August 18, 1997 until its administrative dissolution on October 16, 1998.[55] Florida corporate records list Sarcone as its

---

[51]  *Id.*

[52]  PX 7 (Lewis), Atts. H, I.

[53]  PX 7 (Lewis), ¶22. At this rate of return, assuming no further growth, Nature's Pharmacy would gross **$912,156** in 2007 from just its credit and debit card sales.

[54]  PX 7 (Lewis), ¶¶8(b), 22. Further evidence of Nature's Pharmacy's surging sales is found in the declaration of postal employee, Valerie Rother, who estimates, based on recent observations of the company's product mailings, that it is shipping 350-500 boxes of its product per week. PX 4 (Rother), ¶5.

[55]  PX 7 (Lewis), ¶3, Att. D. Florida corporate records list the address of NMD as 2234 North Federal Highway, #319, Boca Raton 33431. *Id.* However, the signature card for the company lists Sarcone's residential address, 4001 N. Ocean Boulevard, as its address. PX 7 (Lewis), ¶17, Att. V.

sole incorporator and officer.[56]  Moreover, in a pretrial deposition in this case held one month

after NMD's incorporation, Sarcone admitted that he formed and controlled NMD.[57]

Notwithstanding its purported defunct status, NMD is in fact an active corporation which

has facilitated the illicit activities of Sarcone, LipoBan Clinic and Nature's Pharmacy.  As

described in Section II.B.2-3, *supra*, during the period between January 1, 2002 and March 31,

2007, NMD's corporate account at Wachovia Bank received a total of at least $1.1 million from

LipoBan Clinic and Nature's Pharmacy.[58]  A number of the LipoBan Clinic payments were

earmarked for NMD's marketing and consulting services.[59]  In addition, NMD made at least

$29,000 in payments to LipoBan Clinic and $13,800 in payments to Nature's Pharmacy.[60]

Sarcone has remained in continuous control of NMD since its incorporation.  A form for

the credit reporting company Experian, faxed to LipoBan Clinic on August 2, 2002 and

completed by a LipoBan Clinic employee, lists Sarcone as the agent for NMD and provides his

home address as the corporate address.[61]  Moreover, the signature card for NMD's corporate

bank account at Wachovia also lists Sarcone's home address. [62]  In addition, Wachovia records

list Sarcone's license number as the identification for the authorized user on the account.[63]  Not

---

[56] *Id.*

[57] PX 7 (Lewis), ¶30(c), Att. CC.

[58] PX 7 (Lewis), ¶18(a), (b).

[59] PX 7 (Lewis), ¶10(a), Att. M.

[60] PX 7 (Lewis), ¶19(c) and (e).

[61] *Id.*,¶10(f), Att. R.

[62] *Id.*, ¶17, Att. V.  The signature on the account card is illegible.

[63] *Id.*

surprisingly, Sarcone's name appears regularly on deposits to the account, including transactions made as recently as this year.[64]

## III.   LAW AND DISCUSSION

As shown in Section III.A, *infra*, clear and convincing evidence establishes that the contempt defendants are violating the core provisions of the Final Order.  In addition, as discussed in Section III.B, *infra*, the contempt defendants should pay monetary relief for the harm their contumacious conduct has caused.

### A.   The FTC Has Met the Legal Standard for Finding Civil Contempt.

This Court has the inherent power to enforce compliance with its lawful orders through contempt proceedings.[65]  The moving party must prove civil contempt by clear and convincing evidence that:  (1) the order was valid and lawful; (2) the order was clear, definite and unambiguous; and (3) the alleged contemnors had the ability to comply with the order.[66]  The case law also requires proof that the alleged contemnors had knowledge of the order and violated

---

[64] PX 7 (Lewis), ¶18(d).  Records concerning withdrawals from the NMD account suggest that Sarcone used it as a private slush fund throughout the period of the contumacious activity described herein.  For instance, the account was used to make at least 56 separate monthly rent payments to a person whom Sarcone previously identified as his landlord.  PX 7 (Lewis), ¶¶19(d), ¶30, and Att. CC, 418-419.  In addition, there were at least 30 separate "cash" withdrawals from the account totaling $190,601, each signed with a signature that appears to be virtually identical to Sarcone's, *id.*, ¶19(b), as well as at least three separate cash withdrawals, each for $10,000,  made out directly to Sarcone. *Id.*, ¶19(a).

[65] *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987); *Shillitani v. United States*, 382 U.S. 364, 370 (1966); *see also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002) ("An injunction can be enforced, if necessary, through a contempt proceeding.").

[66] *Riccard*, 307 F.3d at 1296 (citing *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)).

its terms.[67] Upon a *prima facie* showing, the burden of production shifts to the alleged contemnor to produce evidence explaining the non-compliance.[68] The court's inquiry in civil contempt proceedings focuses on whether in fact the conduct violated the order at issue, not on the subjective beliefs or intent of the alleged contemnors.[69]

### 1.    The Order is Valid and Lawful.

Judge Ferguson entered a valid and lawful Final Order against Sarcone on July 2, 1999. The Final Order made "permanent" all provisions in the July 9, 1997 PI, thereby requiring Sarcone and "all persons or entities engaged in active concert or participation with . . . [him], who receive actual notice of this Order" to comply with its terms.[70] As a litigant, Sarcone can be presumed to have knowledge of the Order.[71] Moreover, Sarcone demonstrated his knowledge of the Order's existence through subsequent court filings in this Court and the Eleventh Circuit, which cited and challenged aspects of the Order and the underlying decision.

### 2.    The Order is Clear, Definite, and Unambiguous.

The Order is clear and unambiguous. The conduct provisions, originally set forth in the PI, explicitly prohibit Sarcone and those acting in concert with him who receive actual notice of the Order from making, *inter alia*, false representations regarding weight loss, size reduction,

---

[67] *See id; Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). The notice and violation requirements are elements of the traditional legal standard for civil contempt followed by other circuits. *See e.g., Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995).

[68] *See Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991).

[69] *Howard Johnson Co.*, 892 F.2d at 1516.

[70] PX 8 (*SlimAmerica*, 77 F. Supp. 2d at 1277).

[71] *See SEC v. Current Financial Services, Inc.*, 798 F. Supp. 802, 806 n. 11 (D.D.C. 1992) (stating that court reasonably can assume that parties to an action have notice of its orders).

16

performance and efficacy, and scientific validation of performance and efficacy claims with regard to any diet-related program, service, or product.[72]  Indeed, in the aforementioned papers Sarcone filed with both this Court and the Eleventh Circuit, he never challenged the clarity of the Order provisions.

### 3.    The Contemnors had the Ability to Comply with the Order.

Sarcone had the ability to comply with the Final Order and chose not to do so.  Indeed, no one forced him to re-enter the weight loss dietary supplement industry.  Nonetheless, acting in concert with LipoBan Clinic, Nature's Pharmacy, and NMD, Sarcone has sold two purported diet products, and made false weight loss, size reduction and other diet-related claims without any scientific basis.  In so doing, they have violated core provisions of the Final Order, as set forth below.

### a.    By Making False Weight Loss Claims, the Contempt Defendants Have Violated Section I.A. of the Order.

Section I.A. prohibits Sarcone and those acting in concert with him who receive actual notice of the Order from making "directly or by implication . . . [any] . . . false . . . statements or representations that a program, service, or product will cause weight loss."[73]  As discussed earlier, the contempt defendants make weight loss claims such as "allows you to lose all of your excess weight . . . without torturous dieting or changing what you eat whatsoever" (LipoBan), "With the rapid weight loss it creates, Without Changing What You Eat, you're Guaranteed to lose a pound a day or more . . ." (Nature's Fat-Fighting Secret).  In addition, the ads for LipoBan and Nature's Fat-Fighting Secret contain graphic testimonials of persons who have lost huge

---

[72]  Order, citing PI § I.A.-D.

[73]  Order, citing PI § I.A.

amounts of weight in short periods of time using the companies' products: **"I lost 120 Pounds in just 90 days with LipoBan!"** (LipoBan); '**I lost 126 pounds in just 120 days!** . . . No diet plans, no counting calories . . ." (Nature's Fat-Fighting Secret) (emphasis in originals).[74]

Dr. Blonz found no evidence in scientific literature that the active ingredients of LipoBan or Nature's Fat-Fighting Secret, either individually or collectively, when taken as directed by the contemnors, would cause weight loss.[75]  Indeed, even if taken in substantially higher amounts than the recommended daily dose, the weight loss benefits attributable to ingredients in LipoBan Clinic and Nature's Pharmacy's product, Nature's Fat-Fighting Secret, were extremely limited and would not produce results even remotely approaching the benefits claimed by the ads.[76] Based on this lack of evidence and the implausibility of the advertising claims, Dr. Blonz concluded that the contemnors' weight loss claims are false.[77]

### b.   By Making False Size Reduction Claims, the Contempt Defendants Have Violated Section I.B. of the Order.

Section I.B. prohibits Sarcone and those acting in concert with him who receive actual notice of the Order from making "directly or by implication . . . [any] . . . false . . . statements or

---

[74]  PX 7 (Lewis), Atts. E-G (LipoBan); Atts. H-J (Nature's Pharmacy)

[75]  PX 1 (Blonz), ¶¶23, 30-31.

[76]  *Id.*  For instance, one study involving a dose of chitosan 50% higher than the recommended dose for LipoBan reported a weight loss of 2.2 pounds over 60 days when accompanied by a dietary program that included dietary and lifestyle advice as well.  *Id.*, ¶23(a).

[77]  *Id.*  With respect to the testimonials, Dr. Blonz concluded, on the basis of his knowledge of nutritional science, that in addition to dieting, the consumer would have had to run the equivalent of a marathon or an almost-marathon every day in order to achieve the claimed benefits.  PX 1 (Blonz), ¶¶25-26, 33-34.  Not surprisingly, Dr. Blonz found that this was "implausibl[e]."  *Id.*, ¶13.

representations that a program, service, or product will cause a reduction in body size."[78]  As discussed earlier, the contempt defendants make outlandish size reduction claims such as ". . . allows you to lose all of your excess . . . inches without torturous dieting or changing what you eat whatsoever," (LipoBan), "'. . . I lost 4 ½" on my neck, 14" on my waist . . .' Jerry E. Brown, Ph.D." (LipoBan), and  "Without changing what you eat, you're guaranteed to lose a pound a day or more until all your excess . . . inches are gone . . ." (Nature's Fat-Fighting Secret).  As with the contempt defendants' weight loss claims, Dr. Blonz found no evidence that the active ingredients in the products, individually or collectively, when taken as directed, or, for, that matter or in substantially higher amounts, would cause a user's body to reduce in size.  Based on this lack of evidence and the implausibility of the advertising claims, Dr. Blonz concluded that the  contemnors' size reduction claims are false.[79]

### c.      By Making False Performance and Efficacy Claims, the Contempt Defendants Have Violated Section I.C. of the Order.

The contemnors make performance and efficacy claims such as "With LipoBan in your system, dietary fat will be zapped before it has a chance to latch on to your stomach, hips, thighs, and rear-end" and  "It stops hunger, increases energy and prevents fat calories from being absorbed by your body" (Nature's Fat-Fighting Secret).  Again, Dr. Blonz found no evidence for the contemnors' performance or efficacy claims whether or not LipoBan or Nature's Fat-Fighting Secret were taken as directed or in or in substantially higher amounts.  Accordingly, based on this lack of evidence and the implausibility of the claims, Dr. Blonz concluded that the

---

[78]  Order, citing PI § I.B.

[79]  PX 1 (Blonz), ¶¶13, 23, 30-31.

19

contemnors' performance and efficacy claims are false.[80]

> **d.    By Making False Scientific Validation Claims, the Contempt Defendants Have Violated Section I.D. of the Order.**

The contemnors make scientific validation claims such as ". . . numerous clinical studies have been successfully completed on this incredible product . . . " (LipoBan) and "All of the natural ingredients in Nature's Fat-Fighting Secret have been proven and verified by dozens of independent clinical studies to be . . . effective for weight loss" (Nature's Fat-Fighting Secret). In fact, Dr. Blonz found no evidence of peer-reviewed literature regarding the LipoBan or Nature's Fat-Fighting Secret formulations. Dr. Blonz also found no clinical studies verifying the efficacy of active ingredients in either product, when taken as directed, or in substantially higher amounts, in achieving weight loss or any other diet-related benefit. Based on this absence of evidence and the implausibility of the claims, Dr. Blonz concluded that the contemnors' scientific validation claims are false.[81]

> **4.    Sarcone's Business Entities are Also Violating the Order.**

LipoBan Clinic, Nature's Pharmacy, and NMD are subject to the Final Order pursuant to Fed. R. Civ. P. 65(d) because: (1) they have acted in active concert or participation with Sarcone; and (2) they have notice of the Final Order through him as a principal in their operations.[82] With regard to those in active concert or participation, "[n]on-parties that actively

---

[80] *Id.*

[81] *Id.*, ¶31.

[82] *FTC v. Vocational Guides*, 2006-2 Trade Cas. (CCH) P75,520 (M.D. Tenn. 2006) (concluding that where defendant controlled operations of new corporate entity for which spouse served as named principal, both the new corporation and the spouse were presumed to have notice and be in active concert, triggering civil contempt liability pursuant to Rule 65(d)).

aid and abet a party in violating a court order may be held in contempt of court."[83]

Each of the contempt defendants has notice of the Order through Sarcone,[84] has acted in concert with him, and has violated the Final Order directly or facilitated its violation.[85] LipoBan Clinic and Nature's Pharmacy are the public face of the fraud, engaging in the affirmative misrepresentations which give rise to this contempt proceeding. NMD, a company wholly owned by Sarcone, aided or assisted in the scam by serving as a conduit for the ill-gotten gains of LipoBan Clinic and Nature's Pharmacy and by furnishing marketing and consulting services to LipoBan Clinic.[86] Thus, the three companies are each intertwined in Sarcone's violative practices.

**B.      The Contempt Defendants Should be Sanctioned for Their Contumacious Conduct.**

After appropriate contempt proceedings, the Court should enter a Contempt Order that

---

[83] *United States v. Barnette*, 129 F.3d 1179, 1182 n.5 (11th Cir. 1997); s*ee also Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002) ("[I]t has long been recognized that a non-party may be held in civil contempt if, and to the extent that, he knowingly aids or abets an enjoined party in transgressing a court order.").

[84] *See United States v. One Parcel of Land Located at 7326 Highway 45 North, Three Lakes, Oneida County, Wisconsin*, 965 F.2d 311, 316 (7th Cir. 1992) ("a corporation 'knows' through its agents"); *see also Cablevision Sys. Corp. v. Muneyyirci*, No. 90-2997, 1995 WL 362541 at *3 n.1 (E.D.N.Y. Aug. 24, 1990) (holding that firm "had actual notice of the orders by virtue of the fact that the people controlling the corporation had actual knowledge of those orders").

[85] Moreover, the defunct status of LipoBan Clinic and NMD does not insulate them from liability for their contumacious conduct. *See* Fla. Stat. § 607.1904 (2007) ("No body of persons acting as a corporation shall be permitted to set up the lack of legal organization as a defense to an action against them as a corporation"); Fla. Stat. § 607.1405(2)(e) (2007) (providing that dissolution of a corporation does not prevent proceeding against the corporation in its corporate name).

[86] We suspect that NMD may in fact serve simply as an account holder for Sarcone, rather than actually providing marketing or consulting services for either company.

sanctions the contempt defendants for violating the Final Order. Courts may impose sanctions for civil contempt to "(1) coerc[e] the contemnor to comply with a court order, or (2) [to] compensat[e] a party for losses suffered as a result of the contemptuous act."[87] Because a civil contempt action is "instituted and tried as a part of the main cause,"[88] the Commission's contempt proceeding is part of its underlying action against defendants under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). The equitable remedies available to the Commission under a contempt proceeding are, therefore, similar to those available in a Section 13(b) action.[89] These remedies include consumer redress, disgorgement, and rescission of contracts.[90] While civil contempt must be proven with clear and convincing evidence, monetary relief for that contempt need only be proven by a preponderance of the evidence.[91]

Here, consumers have been defrauded of thousands of dollars as a result of the contempt defendants' Order violations. They should be compensated for the harm caused by the contempt defendants' contumacious behavior. In addition, the millions of dollars that the contempt defendants derived from their violations should be disgorged. They should not profit from their

---

[87] *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999).

[88] *Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 445 (1911).

[89] *McGregor*, 206 F.3d at 1387-88 (holding that Section 13(b) analysis is instructive for contempt case because "the remedy for [the defendant's] contumacious conduct is closely akin to the statutory violation which lies at the heart of this action"); *see also FTC v. Kuykendall*, 371 F.3d 745, 763 (10th Cir. 2004) (FTC can seek sanctions on behalf of injured consumers after proving a violation of a Permanent Injunction).

[90] *See, e.g., FTC v. H.N. Singer*, 668 F.2d 1107, 1112 (9th Cir. 1982); *McGregor*, 206 F3d at 1388 (holding that consumer redress is appropriate remedy under Section 13(b)); *FTC v. Gem Merchandising*, 87 F.3d 466, 470 (11th Cir. 1996) ("Among the equitable powers of a court is the power to grant . . . disgorgement. . . ").

[91] *McGregor*, 206 F.3d at 1387.

22

Order violations.[92]  Furthermore, monetary relief should be entered jointly and severally since each contempt defendant is responsible for the repeated Order violations.[93]

---

[92]   In FTC actions, evidence of a defendant's widespread misrepresentations creates a presumption that all of the defendants' customers relied on the misrepresentations. *McGregor*, 206 F.3d at 1388  ("Proof of individual reliance by each purchasing customer is not a prerequisite to the provision of equitable relief needed to redress fraud."); *FTC v. Figgie Int'l Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) (same).

[93]   *Gem Merchandising*, 87 F.3d at 468 (holding that where "each defendant repeatedly participated in the wrongful acts and each defendant's acts materially contributed to the losses suffered," district court properly held "all defendants . . . jointly and severally liable").

## IV.    CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court issue the

Order to Show Cause.


Dated: August 21, 2007                              Respectfully submitted,



                                        WILLIAM BLUMENTHAL
                                        General Counsel



                                        DAVID R. SPIEGEL (A5500392)
                                        CAROLYN L. HANN (A5501119)
                                        Attorneys for Plaintiff
                                        Federal Trade Commission
                                        601 New Jersey Avenue, N.W.
                                        Suite NJ-2122
                                        Washington, DC 20580
                                        Telephone: (202) 326-3281 (Spiegel); 2745 (Hann)
                                        Fax: (202) 326-2558
                                        dspiegel@ftc.gov; chann@ftc.gov

24