**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Sealed

**Case No. 0:97-CIV-06072-DLG/JJO**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SLIMAMERICA, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

SEALED

(~~proposed~~)

## *EX PARTE* TEMPORARY RESTRAINING ORDER

On July 2, 1999, this Court entered a Final Judgment for Permanent Injunction ("Final Order"). The Final Order resolved the case filed by the Plaintiff, the Federal Trade Commission ("FTC" or "Commission") as to several defendants, including Frank Sarcone. Among other things, the Final Order made "permanent" an earlier Preliminary Injunction Order ("PI") issued by the Court on July 9, 1997.

The FTC has moved *ex parte* for a Temporary Restraining Order, Preliminary Injunction, And Other Equitable Relief, Pending Decision on Plaintiff's Motion for a Civil Contempt Order, concerning individual defendant, Frank Sarcone a/k/a Frank Sarcona and David Johnson ("Sarcone"), and three corporate entities that are in active concert or participation with him, LipoBan Clinic, Inc.; Nature's Pharmacy, Inc.; and National Marketing Data, Inc.

This Court has considered Plaintiff's Motion for Temporary Restraining Order, and the declarations, exhibits, and memorandum of law submitted in support thereof, and finds as follows:

1

1. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto.

2. There is good cause to believe that Sarcone; LipoBan Clinic, Inc.; Nature's Pharmacy, Inc.; and National Marketing Data, Inc. (hereinafter, collectively "Contempt Defendants") have actual notice of the Final Order and the ability to comply with that order.

3. There also is good cause to believe that Contempt Defendants have violated, and continue to violate, the Final Order. Specifically, the evidence submitted with Plaintiff's *ex parte* Motion for Temporary Restraining Order and its Motion for Order to Show Cause, and the supporting memoranda, shows that there is good cause to believe Contempt Defendants have violated the core provisions of the conduct prohibitions of the Final Order through their operation of businesses making false statements about (1) weight loss (Final Order, citing PI § I.A); (2) body size reduction (Final Order, citing PI § I.B); (3) performance and efficacy (Final Order, citing PI § I.C); and (4) scientific validation of performance or efficacy claims (Final Order, citing PI § I.D).

4. The FTC has not provided notice to Contempt Defendants of its Motions because it alleges that advance notice of this action will lead to the dissipation of assets and the destruction of property or evidence. The FTC's request for *ex parte* relief is premised on Contempt Defendants' continuing order violations, and Sarcone's past history of fraud, asset concealment, and violation of court orders. Based on the foregoing, there is good cause to issue this order on an *ex parte* basis.

5. The Court has considered the FTC's likelihood of ultimate success and weighed the equities, and finds that a temporary restraining order providing for an asset freeze, the appointment of a Temporary Receiver, the preservation of business records, financial disclosures, expedited discovery, and other equitable relief is in the public interest.

2

6.    Fed. R. Civ. P. 65(c) does not require security of the United States or an officer or agency thereof.

## I.
## DEFINITIONS

For the purposes of this Temporary Restraining Order, the following definitions apply:

A.    "Contempt Defendants" means: (1) individual defendant, Frank Sarcone, a/k/a Frank Sarcona and David Johnson, and any other aliases used by Sarcone, and (2) corporate defendants, LipoBan Clinic, Inc., Nature's Pharmacy, Inc., and National Marketing Data, Inc., and each of them, individually and jointly, any affiliates or subsidiaries thereof that they control, and their successors and assigns.

B.    "Receivership Defendants" means LipoBan Clinic, Inc.; Nature's Pharmacy, Inc.; and National Marketing Data, and each of them individually and jointly, any affiliates or subsidiaries thereof that any Receivership Defendant controls, and their successors and assigns.

C.    "Assets" means any legal or equitable interest in, right to, or claim to, any and all real and personal property of Contempt Defendants, or held for the benefit of Contempt Defendants, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, inventory, checks, notes, accounts, credits, receivables, shares of stock, contracts, and all cash and currency, or other assets, or any interest, therein, wherever located.

D.    "Receiver" or "Temporary Receiver" shall mean the Temporary Receiver appointed in Section VII of this Order.  The term "Temporary Receiver" also includes any deputy receivers or agents as may be named by the temporary receiver.

3

## II.
## ASSET FREEZE

IT IS FURTHER ORDERED that Contempt Defendants are hereby temporarily restrained and enjoined from directly or indirectly:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or securing interest in, or otherwise disposing of any assets, wherever located, including outside the United States, that are (1) owned or controlled, directly or indirectly, by any Contempt Defendant(s), in whole or in part, or held, in whole or in part for the benefit of any Contempt Defendant(s); (2) in the actual or constructive possession of any Contempt Defendant(s); or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Contempt Defendant(s), including but not limited to, any assets held by, or under the name of any Contempt Defendant(s) at any bank, savings and loan institution, or bank of any Contempt Defendant(s), or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, whether in the United States or in a jurisdiction outside the United States;

B.      Opening or causing to be opened any safe deposit boxes titled in the name of any Contempt Defendant(s), or subject to access by any Contempt Defendant(s);

C.      Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Contempt Defendant(s);

D.      Obtaining a personal or secured loan;

4

E.      Incurring liens or encumbrances on real property, personal property or other assets in the name, singly or jointly, of any Contempt Defendant(s); and

F.      Cashing any checks from customers, clients, or customers of any Contempt Defendant(s).

The assets affected by this Section shall include (a) all assets of Contempt Defendants as of the time this Order is entered; and (b) those assets obtained after entry of this Order that are derived from any conduct that violates the Final Order.  This Section does not prohibit transfers to the Receiver, as specifically required in Sections X (Delivery of Receivership Property) and XI (Transfer of Funds to Receiver by Financial Institutions and Other Third Parties), nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section IV of this Order.

### III.
### FINANCIAL REPORTS

IT IS FURTHER ORDERED that each Contempt Defendant shall, within three (3) business days after service of this Order, prepare and serve on counsel for Plaintiff and the Receiver:

A.      Completed financial statements fully disclosing their finances and those of all corporations, partnerships, trusts or other entities that they now own, control, or are associated with in any capacity on the forms attached to this Order as Attachments A and B, accurate as of the date of the service of this Order upon Contempt Defendants; and

B.      Copies of signed and completed federal and state income tax forms, including all schedules and attachments for the three most recent filing years.

Contempt Defendants shall provide copies of such other financial statements as the Receiver or Plaintiff may, from time to time, request in order to monitor Contempt Defendants' compliance with the provisions of this Order.

## IV.
## FOREIGN ASSET REPATRIATION

IT IS FURTHER ORDERED that, within three (3) business days following the service of this Order, each Contempt Defendant shall:

A.      Provide counsel for Plaintiff and the Receiver with a full accounting of all funds and assets outside of the territory of the United States which are held either: (1) by Contempt Defendant(s); (2) for the benefit of any Contempt Defendant(s); or (3) under direct or indirect control, individually or jointly, of any Contempt Defendant(s), as required by the forms included in Attachments A and B;

B.      Transfer to the territory of the United States all such funds and assets in foreign countries; and

C.      Hold and retain all repatriated funds and assets, and prevent any disposition, transfer, or dissipation whatsoever of any such assets or funds, except as required by this Order.

Contempt Defendants shall provide access to records and documents held by financial institutions outside the territorial United States, by signing the Consent to Release of Financial Records attached to this Order as Attachment C, immediately upon service of this Order upon them, or within such time as permitted by the Receiver or counsel for Plaintiff in writing.

## V.
## NON-INTERFERENCE WITH REPATRIATION

IT IS FURTHER ORDERED that Contempt Defendants, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section IV of this Order, including but not limited to:

A.      Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all assets have been fully repatriated pursuant to Section IV of this Order; and

B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section IV of this Order.

## VI.
## RETENTION OF ASSETS BY FINANCIAL INSTITUTIONS
## AND OTHER THIRD PARTIES

IT IS FURTHER ORDERED that any financial or brokerage institution, escrow agent, title company, commodity trading company, trust, entity, or person that holds, controls or maintains custody of any account or asset owned or controlled by any Contempt Defendant(s), or has held, controlled or maintained any account or asset of, or on behalf of, any Contempt Defendant(s) at

7

any time since the entry of this Court's Final Order on July 2, 1999, upon service with a copy of this Order shall:

    A.    Hold and retain within its control and prohibit Contempt Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any of the assets, funds, or other property held by or on behalf of any Contempt Defendant(s) in any account maintained in the name of or for the benefit of any Contempt Defendant(s), in whole or in part except:

        1.  as directed by further order of the Court;

        2.  as directed in writing by the Receiver (regarding assets held in the name or for the benefit of Receivership Defendants); or

    B.    Deny the Contempt Defendants access to any safe deposit box titled in the name of any Contempt Defendant(s), individually or jointly, or subject to access by any Contempt Defendant(s), whether directly or indirectly;

    C.    Provide counsel for Plaintiff[1] and the Receiver, within three (3) business days after being served with a copy of this Order, a certified statement setting forth:

        1.  The identification number of each such account or asset:  (1) titled in the name, individually or jointly, of any Contempt Defendant(s); (2) held on behalf of, or for the benefit of, any Contempt Defendant(s); (3) owned or controlled by any Contempt Defendant(s); or (4) otherwise subject to access by any Contempt Defendant(s), directly or indirectly;

---

[1] For purposes of this Order, Counsel for Plaintiff means FTC attorneys David R. Spiegel and Carolyn L. Hann, and any other FTC attorneys who appear in this action after the entry of this Order.  Counsel for Plaintiff's mailing address for all materials mailed pursuant to this Order is 601 New Jersey Ave., N.W., Room NJ-2122, Washington, DC 20001.  Counsel for Plaintiff's fax number is (202) 326-2558.

2. The balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted;

3. The identification of any safe deposit box that is either titled in the name of any Contempt Defendant(s), or is otherwise subject to access by any Contempt Defendant(s); and

4. If an account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on such date, and the manner in which such account or asset was closed or removed.

D.   Provide counsel for Plaintiff or the Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee.

E.   Cooperate with all reasonable requests of the Receiver relating to this Order's implementation.

## VII.
## APPOINTMENT OF TEMPORARY RECEIVER

IT IS FURTHER ORDERED that Mark Raymond, Esq. is appointed Temporary Receiver for Receivership Defendants, and any affiliates or subsidiaries thereof controlled by any

Receivership Defendant(s), with full power of an equity Receiver. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all local rules and laws governing federal equity receivers.

## VIII.
## DUTIES AND AUTHORITY OF RECEIVER

IT IS FURTHER ORDERED that the Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of the Receivership Defendants, including any Contempt Defendant(s), from control of, management of, or participation in, the affairs of the Receivership Defendants.

B.     Take exclusive custody, control and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated, including but not limited to assets and documents located at the business premises of Instamail, Inc. at 2200 N.W. Boca Raton Blvd., #105, Boca Raton, FL 33431. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants.

C.     Take all steps necessary to secure the business premises of the Receivership Defendants, which may include, but are not limited to, taking the following steps as the Receiver deems necessary or advisable:  (1) serving and filing this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents

10

of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) video recording all portions of the location; (5) changing the locks and disconnecting any computer modems or other means of access to the computer or other documents maintained at that location; or (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants.  Such authority shall include, but not be limited to, the authority to order any owner, director, or officer of any Receivership Defendant to remove him or herself from the business premises.

      D.     Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets.

      E.     Enter into contracts and purchase insurance as advisable or necessary.

      F.     Prevent the inequitable distribution of assets and to determine, adjust, and protect the interests of consumers and creditors who have transacted business with one or more Receivership Defendants.

      G.     Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents.

11

H.     Choose, engage, and employ attorneys, accountants, appraisers, investigators, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities.

I.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership defendants, such as rental payments.

J.     Collect any money due or owing to the Receivership Defendants.

K.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order.

L.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against the Receivership Defendants or the Receiver, that the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or to carry out the Receiver's mandate under this Order.

M.     Continue and conduct the businesses of the Receivership Defendants in such a manner, and to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably, using the assets of the receivership estate, and lawfully, if at all.

N.     Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership and compliance with this Order and the Final Order.  Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver.

O.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account.

P.     Maintain accurate records of all receipts and expenditures made by the Receiver.

Q.     The Receiver is directed to pay all employees of Receivership Defendants any wages and salary accrued up to the date the Receiver accesses the business premises identified in Section VIII, provided that the Receiver shall make said payment within ten days of service of this Order upon all Contempt Defendants, and further provided that payments shall be made from the liquid assets of the Receivership Defendants.

## IX.
## COOPERATION WITH THE RECEIVER

IT IS FURTHER ORDERED that Contempt Defendants shall fully cooperate with and assist the Receiver.  Contempt Defendants' cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer or electronic files or information in any medium; or advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.  Contempt Defendants are hereby restrained and enjoined from directly or indirectly:

13

A.    Transacting any of the business of the Receivership Defendants;

B.    Excusing debts owed to the Receivership Defendants;

C.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants;

D.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

E.    Failing to notify the Receiver of any asset, including accounts, of any Receivership Defendants held in any name other than the name of one or more Receivership Defendants or by any person or entity other than Receivership Defendants or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets; or

F.   Doing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody, control, possession, or managing of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

This Section does not prohibit transfers to the Receiver, as specifically required in Sections X (Delivery of Receivership Property) and XI (Transfer of Funds to Receiver by Financial Institutions and Other Third Parties), nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section IV of this Order.

14

## X.
## DELIVERY OF RECEIVERSHIP PROPERTY

IT IS FURTHER ORDERED that immediately upon service of this Order upon them, individual defendant, Frank Sarcone, the Receivership Defendants, as well as any third party holding funds, assets, or property of the Receivership Defendants, including but not limited to any third parties doing business at 2200 N.W. Boca Raton Blvd., #105, Boca Raton, FL 33431, shall forthwith or within such time as permitted by the Receiver in writing, deliver to the Receiver possession and custody of:

A.      All funds, assets, and property of the Receivership Defendants, whether situated within or outside the territory of the United States, which are:  (1) held by one or more Receivership Defendants, individually or jointly, (2) held for the benefit of one or more Receivership Defendants, or (3) under the direct or indirect control, individually or jointly, of one or more Receivership Defendants;

B.      All documents of the Receivership Defendants, including but not limited to all books and records of assets including funds and property, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, cancelled checks, records of wire transfers, records of ACH transactions, and check registers), corporate minutes, contracts, customer lists, title documents, and electronic records;

C.      All funds and other assets belonging to members of the public now held by one or more Receivership Defendants;

15

D.      All keys, computer and other passwords, entry codes, combinations to locks required to open or gain access to any of the property or effects, and all monies in any bank deposited to the credit of the Receivership Defendants, wherever situated; and

E.      Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

F.      This section and its subdivisions includes all business assets, documents, or property, including computers used in connection with Receivership Defendants' businesses that are located at the personal residence of individual defendant, Sarcone, 4001 N. Ocean Blvd., #1503N, Boca Raton, FL 33431.   Said business assets, documents, and property shall be produced at a time and place to be designated by the Receiver to be no later than 48 hours after service of this Order, unless the parties mutually agree to a later time.  In order to prevent the destruction of computer data, upon service of this order upon defendants, all computers subject to this section shall be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be used until produced for copying and inspection, along with any codes needed for access.

## XI.
## TRANSFER OF FUNDS TO THE RECEIVER
## BY FINANCIAL INSITUTIONS AND OTHER THIRD PARTIES

IT IS FURTHER ORDERED that, upon service of a copy of this Order, any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, or trust shall cooperate with all reasonable requests of counsel for Plaintiff and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

## XII.
## RECEIVER'S REPORTS

IT IS FURTHER ORDERED that the Receiver shall report to this Court on or before the

date set for the hearing to Show Cause regarding the Preliminary Injunction or the hearing to Show

Cause regarding the Contempt Motion, whichever occurs first, on:  (1) the steps taken by the

Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated

assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants;

(4) the steps the Receiver intends to take in the future to: (a) prevent any diminution in the value of

assets of the Receivership Defendants; (b) pursue receivership assets from third parties; and (c)

adjust the liabilities of the Receivership Defendants, if appropriate; and (5) any other matters

which the Receiver believes should be brought to the Court's attention.  Provided, however, if any

of the required information would hinder the Receiver's ability to pursue receivership assets, the

portions of the Receiver's report containing such information may be filed under seal and not

served on the parties.

## XIII.
## COMPENSATION OF RECEIVER

IT IS FURTHER ORDERED that the Receiver, and all persons or entities retained or hired

by the Receiver as authorized under this Order, shall be entitled to reasonable compensation for the

performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket

expenses incurred by them, from the assets now held by or in the possession or control of, or

which may be received by, the Receivership Defendants.  The Receiver shall file with the Court

and serve on the parties a request for the payment of reasonable compensation at the time of the

17

filing of any report required by Section XII.  The Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

## XIV.
## CONTEMPT DEFENDANTS' ACCESS TO RECORDS

IT IS FURTHER ORDERED that the Receiver shall allow the Contempt Defendants and their representatives reasonable access to the records of the Receivership Defendants.  The purpose of this access shall be to inspect, inventory, and copy any and all documents and other property owned by or in the possession of the Receivership Defendants.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XV.
## PRESERVATION OF RECORDS

IT IS FURTHER ORDERED that Contempt Defendants and their successors, assigns, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, directly or through any corporation or other device, are temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or finances of any Contempt Defendant.

## XVI.
## EXPEDITED DISCOVERY

IT IS FURTHER ORDERED that the FTC is granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this Order, in lieu of the time periods,

18

notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil

Procedure, expedited discovery as to parties and non-parties shall proceed as follows:

A.     The FTC may, upon three (3) calendar days notice, take the deposition of any

person or entity, whether or not a party, in any judicial district, for the purpose of discovering: (1)

business and financial information concerning the Contempt Defendants; and (2) notice of and

compliance with the Final Order and this Order. The depositions may be conducted telephonically

or in person. Deposition transcripts that have not been signed by the witness may be used at the

preliminary injunction hearing in this matter. *Provided that,* notwithstanding Fed. R. Civ. P.

30(a)(2), this Subparagraph shall not preclude any future depositions by the FTC. *Provided*

*further,* that any deposition taken pursuant to this subparagraph shall be in addition to, and not

subject to, the presumptive limits on depositions set forth in Fed. R. Civ. P. 30(a)(2)(A). Service

of discovery upon a Contempt Defendant, taken pursuant to this Section, shall be sufficient if made

by email, facsimile or by overnight delivery.

B.     The FTC may, upon five (5) calendar days notice, including through the use of a

Rule 45 Subpoena, demand the production of documents from any person or entity, whether or not

a Contempt Defendant, relating to (1) the assets of Contempt Defendants; and (2) compliance with

this Order. *Provided* that two (2) calendar days notice shall be deemed sufficient for the

production of any such documents that are maintained or stored only as electronic data. For

purposes of this subsection, the FTC may serve any such subpoena by email, facsimile or

overnight courier.

C.     The FTC is granted leave to subpoena documents immediately from any Financial

Institution, account custodian, or other entity or person that holds, controls, or maintains custody

of any account or asset of any Contempt Defendant(s), or has held, controlled or maintained

19

custody of any account or asset of any Contempt Defendant(s) concerning the nature, location, status, and extent of Contempt Defendants' Assets, and compliance with this Order, and such financial institution, account custodian or other entity shall respond to such subpoena within five (5) business days after service. For purposes of this subsection, the FTC may serve any such subpoena by email, facsimile or overnight courier.

## XVII.
## CONSUMER CREDIT REPORTS

IT IS FURTHER ORDERED that pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning any of Contempt Defendants to counsel for Plaintiff or the Receiver.

## XVIII.
## BANKRUPTCY PETITIONS

IT IS FURTHER ORDERED that, in light of the appointment of the Receiver, the Receivership Defendants are hereby prohibited from filing a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

## XIX.
## STAY OF ACTIONS

IT IS FURTHER ORDERED that:

A.      Except by leave of this Court, during the pendency of the Receivership ordered herein, Contempt Defendants and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Contempt Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents and employees be and are hereby stayed from:

20

1.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.      Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

3.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs or replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4.      Doing any act or thing whatsoever to interfere with the Receiver's taking custody, control, possessions, or management of the assets or documents subject to this receivership; or to harass or interfere with the receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

B.   This Section does not stay:

1.      The commencement or continuation of a criminal action or proceeding;

2.      The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3.      The enforcement of a judgment, other than a money judgment, obtained in

an action or proceeding by a governmental unit to enforce such governmental unit's

police or regulatory power;

4.      The commencement of any action by the Secretary of the United States

Department of Housing and Urban Development to foreclose a mortgage or deed of

trust in any case in which the mortgage or deed of trust held by the Secretary is

insured or was formerly insured under the National Housing Act and covers

property, or combinations of property, consisting of five or more living units; or

5.      The issuance to a Contempt Defendant of a notice of tax deficiency.

## XX.
## SERVICE OF ORDER

IT IS FURTHER ORDERED that copies of this Order may be served by any means,

including facsimile transmission or email, by employees or agents of the FTC or the Receiver,

upon any financial institution or other entity or person that may have possession, custody, or

control of any documents or assets of Contempt Defendants, or may otherwise be subject to any

provision of this Order.  Service upon any branch or office of any financial institution shall effect

service upon the entire financial institution.

## XXI.
## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY CONTEMPT DEFENDANTS

IT IS FURTHER ORDERED that each Contempt Defendant, within three (3) business days

of receipt of this Order, must submit to counsel for Plaintiff a truthful sworn statement

acknowledging receipt of this Order.

## XXII.
### PROOF OF DISTRIBUTION OF TEMPORARY RESTRAINING ORDER
### BY CONTEMPT DEFENDANTS

IT IS FURTHER ORDERED that Contempt Defendant shall immediately provide a copy

of this Order to their agents, servants, employees, consultants, and any affiliated businesses, and

other persons and entities subject in any part to their direct or indirect control.  Within five (5)

business days of receipt of this Order, Contempt Defendants must submit to counsel for Plaintiff a

truthful sworn statement identifying those persons and entities to whom this Order has been

distributed.

## XXIII.
### SERVICE OF PLEADINGS

IT IS FURTHER ORDERED that Plaintiff shall serve on Contempt Defendants copies of

this Order, complaint, and supporting memoranda, affidavits and other evidence.  Contempt

Defendants shall serve on the Commission all memoranda, affidavits and other evidence on which

Contempt Defendants intend to rely at the preliminary injunction hearing set in this matter not later

than 4:00 p.m. (Eastern Standard Time) on the third day prior to the hearing date.

## XXIV.
### EXPIRATION OF TEMPORARY RESTRAINING ORDER

IT IS FURTHER ORDERED that the Temporary Restraining Order granted herein expires

on the 6th day of September, 2007, at midnight unless, within such time, the Order, for good cause

shown, is extended for an additional period not to exceed ten (10) calendar days, or unless it is

extended with the consent of the parties.

23

## XXVI.
## ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

IT IS FURTHER ORDERED that each of the Contempt Defendants shall appear before

this Court on the 6th day of September, 2007, at 1:30 p.m. at the United States District Court for

the Southern District of Florida, located at 300 N.E 1st Avenue, South Courtroom, 2nd Floor,

Miami, 33132, to show cause, if any there be, why this Court should not enter a Preliminary

Injunction, pending a final ruling on Plaintiff's Motion for a Civil Contempt Order against

Contempt Defendants.

## XXVII.
## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED the court shall continue to retain jurisdiction of this matter

for all purposes.


IT IS SO ORDERED, this 22nd day of August, 2007.


_____

John J. O'Sullivan
United States Magistrate Judge

24